WALLER, Chief Justice,
for the Court:
¶ 1. Erik Wayne Hollie walked into a pawn shop in Wesson, Mississippi, and *826 killed the owner because he didn’t follow “the Lord.” Hollie claimed “the Lord” led him there to kill the man. A couple of days before the murder, Hollie robbed a gas-station attendant at knife point because, according to Hollie, the two men had argued about religion.
¶2. Shortly after the murder, Hollie turned himself in and confessed to both the armed robbery and the capital murder. The trial judge appointed an attorney to represent Hollie, and he filed a motion for a mental evaluation. A state doctor evaluated Hollie, but before a competency hearing was held, Hollie pleaded guilty to both crimes. The trial judge accepted the guilty pleas without any adjudication on Hollie’s mental status.
¶3. At sentencing, Hollie put on no mitigating evidence, and he specifically instructed his attorney to put on no defense. The only thing before the jury from the defense was Hollie’s own statement to the jury, which was just one sentence. “I ask that you let the Lord deal with me and sentence me to death.” The jury did just that.
¶ 4. Hollie filed no appeal or any motions for post-conviction relief. The matter now is before the Court on mandatory review of his sentence of death. Finding that the trial court erred in ordering a mental evaluation but failing to hold a hearing on Hollie’s competency, the Court vacates Hollie’s guilty pleas, convictions, and his sentences, and remands this case for a competency determination.
FACTS AND PROCEDURAL HISTORY
¶ 5. On September 5, 2009, Hollie got into an argument about religion at a BP gas station with an employee named Lalit Patel. The next day, Hollie went back to the gas station and got into an altercation with Patel. Hollie pulled a knife on Patel, putting the scuffle to an end. Hollie then left, grabbing a pack of cigarettes and driving off with $30 worth of gas.
¶ 6. Two days later, on September 8, 2009, Hollie went into the Wesson Pawn and Gun Shop and killed the store owner, Denmon Ward. Hollie took several handguns from the store and left. The next day, Hollie turned himself in to law enforcement. Once in custody, Hollie confessed to killing Ward. He said he did not know why he did it, but that he was led to the pawn shop by “the Lord,” and that Ward died because he did not follow “the Lord.” Hollie also confessed to the armed robbery of Patel.
¶ 7. During his statement to police, Hollie made multiple references to having mental health issues and said he was “fed up with life” and that the police could kill him. When asked why he had come to the police department that day, Hollie replied that the “Lord” had led him there “to turn myself in or die.” He also stated that he planned to “go to his death” that morning but the officers talked him out of it. Later in the interview Hollie asked the officers to “take me out back and do me right and shoot me in the f;: ⅜ *ing head. That’s all I want.”
¶ 8. The grand jury indicted Hollie for the armed robbery of Patel and for the capital murder of Ward. The indictment for capital murder provided that Hollie:
did willfully, unlawfully and feloniously, without the authority of law and with or without deliberate design, kill and murder one Denmon Ward, a human being, at a time when he, the said Erick Wayne Hollie, was then and there engaged in the commission of the crime of Armed Robbery, contrary to and in violation of Section 97 — 3—19(2)(e) of the Mississippi Code....
*827 In pertinent part, the indictment for armed robbery charged Hollie:
with the unlawful and felonious intent to take, steal and carry away from the presence of Lalit Patel, a human being, personal property, of value of Lalit Patel dba BP Fuel Station, he, the said Erik Wayne Hollie, by putting the said Lalit Patel in fear of immediate injury to his person by the display and exhibition of a certain deadly weapon, to-wit: a knife, did wilfully, unlawfully and feloniously take, steal and carry away from the presence of the said Lalit Patel, against his will, certain personal property of value of the said Lalit Patel dba BP Fuel Station, to-wit: gasoline, contrary to and in violation of Section 97-3-79 of the Mississippi Code ....
¶ 9. At Hollie’s arraignment, the trial judge asked Hollie if he wanted an attorney. Hollie replied, “it don’t matter.” The judge followed up, “It don’t matter ... ? Well, are you going ... to do anything to hire a lawyer or anything of that nature?” Hollie said “no,” though later at the proceeding he said he wanted an attorney appointed to represent him.
¶ 10. After counsel was appointed, Hollie’s attorney requested a mental examination to determine whether he was competent to stand trial and whether he was insane under Mississippi law at the time of the crimes. The trial judge ordered an examination. Dr. Criss Lott conducted the examination and prepared a report.
¶ 11. But before the court held a hearing on the matter, Hollie pleaded guilty to both crimes. The court never held a hearing on Hollie’s competence or sanity, but instead accepted Hollie’s guilty pleas without any adjudication on Hollie’s mental status. Dr. Lott never testified, and his report, while filed with the trial court, was never admitted into evidence.
¶ 12. At sentencing, before the jury was selected, Hollie’s attorney requested to read and submit into the record an affidavit prepared by Hollie and to question Hollie under oath. The affidavit prohibited Hollie’s attorney from putting on any defense or taking any action on behalf of Hollie. This included questioning the ve-nire, striking any potential jurors, calling any witnesses, offering any mitigating evidence, or making any type of closing arguments. The affidavit also stated that the waiver of these constitutional rights was' knowing and done after consultation with counsel. Hollie also acknowledged under oath that he took these actions voluntarily and against the advice of counsel.
¶ 13. The State then proceeded to select the jury without any actions from Hollie or his counsel. Once the jury was empaneled, the State put on its case, arguing for the death penalty. After the State rested and gave closing remarks, Hollie addressed the jury. He asked that they sentence him to death and “let the Lord deal with me.”
¶ 14. The State offered two aggravating factors:
Consider only the following elements of aggravation in determining whether the death penalty should be imposed:
(1) Whether the defendant has been previously convicted of another capital offense or of a felony involving the use or threat of violence to the person. [§ 99 — 19—101(5)(b), hereafter the “prior violent felony conviction” ag-gravator]
(2) Whether the capital offense was committed while the defendant was engaged in the commission of a robbery. [§ 99 — 19—101(5)(d) hereafter the “committed while engaged in robbery” aggravator]
The first aggravating factor referred to the armed robbery of Patel. The second *828 referred to the robbery of Ward under the felony murder statute. No proof of mitigating factors was offered.
¶ 15. The jury returned a verdict imposing the death penalty, finding the Patel robbery as the only aggravating factor. The verdict read:
[W]e, the jury, unanimously find that the aggravating circumstances of (list or itemize all of the aggravating circumstances presented in section B of this instruction) which you unanimously agree existed in this case beyond a reasonable doubt.
Mr. Hollie pled guilty to armed robbery on November the 6th, 2009. Incident occurred on September 6th, 2009.
The trial court sentenced Hollie to death for the murder of Ward and fifty years for the armed robbery. The judgment of conviction and the sentence were entered on March 16, 2010.
¶ 16. After his conviction and sentence, Hollie did not file a post-trial motion or any appeal or any motions for post-conviction relief.[1] No action was taken on his behalf until March 22, 2012, when the Office of the State Public Defender filed a motion to substitute counsel and to file out-of-time post-trial motions, including seeking leave to file an out-of-time appeal.[2] The trial court initially granted Hollie’s motions, but after Hollie sought a new mental evaluation, the State filed a motion arguing the trial court lacked jurisdiction. More than a year later, on November 18, 2013, the trial judge ruled in favor of the State, reversing his prior order and dismissing all of the proceedings. Then on January 2, 2014, the State filed a motion to set a date for execution with this Court. We denied that motion, and Hollie’s case is now before the Court under Mississippi Code Section 99-19-105, which mandates a review of all death sentences. Hollie raises eight issues, but, because the first matter is dispositive, we do not address the subsequent issues:[3]
*829 The conviction relied upon by the jury in imposing a death sentence, and/or the death sentence itself, must be set aside because the trial court failed to make any judicial determination at any point in the proceedings that Hollie was competent to proceed.
DISCUSSION
¶ 17. This Court is reviewing Hollie’s sentence pursuant to the statutory requirement that each sentence of death must be evaluated to determine:
(a) Whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor;
(b) Whether the evidence supports the jury’s or judge’s finding of a statutory aggravating circumstance as enumerated in Section 99 — 19—101;
(c) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant; and
(d) Should one or more of the aggravating circumstances be found invalid on appeal, the Mississippi Supreme Court shall determine whether the remaining aggravating circumstances are outweighed by the mitigating circumstances or whether the inclusion of any invalid circumstance was harmless error, or both.
Miss.Code Ann. § 99 — 19—105(3) (Supp.2014). Additionally, this Court “shall render its decision on legal errors enumerated, the factual substantiation of the verdict, and the validity of the sentence.” Miss.Code Ann. § 99 — 19—105(6) (Supp.2014).

Standard of Review

¶ 18. This Court reviews appeals from a death sentence with heightened scrutiny. Bennett v. State, 933 So.2d 930, 939 (Miss.2006) (citing Balfour v. State, 598 So.2d 731, 739 (Miss.1992)); Batiste v. State, 121 So.3d 808, 829 (Miss.2013). “This higher level of scrutiny requires that all doubts be resolved in favor of the accused because ‘what may be harmless error in a case with less at stake becomes reversible error when the penalty is death.’ ” Bennett, 933 So.2d at 939 (quoting Irving v. State, 361 So.2d 1360, 1363 (Miss.1978)); Batiste, 121 So.3d at 829.
The conviction relied upon by the jury in imposing a death sentence, and/or the death sentence itself, must be set aside because the trial court failed to make any judicial determination at any point in the proceedings that Hollie was competent to proceed.
A. Capital-Murder Conviction and Sentence
¶ 19. For a criminal defendant to be deemed mentally competent to stand trial, he must have “the sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding ... and ... a rational as well as factual understanding of the proceedings against him.” Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 788-89, 4 L.Ed.2d 824, 825 (1960) (per curiam); Coleman v. State, 127 So.3d 161, 164 *830 (Miss.2013). This Court further has defined a competent defendant as one:
(1) who is able to perceive and understand the nature of the proceedings; (2) who is able to rationally communicate with his attorney about the case; (3) who is able to recall relevant facts; (4) who is able to testify in his own defense if appropriate; and (5) whose ability to satisfy the foregoing criteria is commensurate with the severity of the case.
Hearn v. State, 3 So.3d 722, 728 (Miss.2008).
¶ 20. It is a violation of a criminal defendant’s right to due process to try or convict him while he is incompetent. Pate v. Robinson, 383 U.S. 375, 385, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); Smith v. State, 149 So.3d 1027, 1031 (Miss.2014). This is because such action fundamentally impinges upon his right to a fair trial. Pate, 383 U.S. at 385, 86 S.Ct. 836. The United States Supreme Court has held that “the prohibition [against trying or convicting an incompetent defendant] is fundamental to an adversary system of justice.” Drope v. Missouri, 420 U.S. 162, 172, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); Smith, 149 So.3d at 1031.
¶ 21. To ensure this constitutional right is properly guarded, this Court has adopted Uniform Rule of Circuit and County Court Practice 9.06, which provides:
If before or during trial the court, of its own motion or upon motion of an attorney, has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination by some competent psychiatrist selected by the court....
After the examination the court shall conduct a hearing to determine if the defendant is competent to stand trial. After hearing all the evidence, the court shall weigh the evidence and make a determination of whether the defendant is competent to stand trial. If the court finds that the defendant is competent to stand trial, then the court shall make the finding a matter of record and the case will then proceed to trial. If the court finds that the defendant is incompetent to stand trial, then the court shall commit the defendant to the Mississippi State Hospital or other appropriate mental health facility.
URCCC 9.06 (emphasis added). This rule requires that, once the trial court has reasonable grounds to believe the defendant is incompetent, the trial court must order a mental evaluation followed by a competency hearing to determine whether the defendant is competent to stand trial. Sanders v. State, 9 So.3d 1132, 1137 (Miss.2009).
¶ 22. In cases like today’s, in which a mental evaluation has been ordered, this Court has held that this is a per se showing that the trial court had reasonable grounds to believe the defendant was incompetent to stand trial. Id. As a result, once a mental evaluation is ordered, a competency hearing is mandatory. Id.; Smith, 149 So.3d at 1033.
¶ 23. When a mental evaluation is ordered but no competency hearing is conducted, this Court has held that this is reversible error, unless the purpose of Rule 9.06 has been satisfied under the circumstances. Hearn v. State, 3 So.3d 722, 730 (Miss.2008). In Hearn, the trial court ordered a mental examination, which was conducted, but the judge failed to hold a formal competency hearing. However, at trial, the State’s examining doctor testified as to Hearn’s competence and was subject to cross-examination by Hearn. *831 This Court stated that this satisfied the intent of Rule 9.06 and found no error. Id.
¶24. In another case similar to the current one, a plurality of the Court found that when the trial court judge fails to hold a competency hearing, the purpose of Rule 9.06 cannot be met by a retroactive hearing. Coleman v. State, 127 So.3d 161, 167 (Miss.2013). In that case, Coleman was granted a hearing after his conviction to determine his competency. But, at the hearing, Coleman put on almost no evidence suggesting he was incompetent. Id. at 164. Nevertheless, a plurality of this Court, concerned with the inherent dangers and difficulties in holding retrospective competency hearings, found such hearings failed to meet the standard set forth in Hearn. Id. at 167. That is, the purpose of Rule 9.06 is not met by a retrospective hearing. Id.
¶25. More recently, in Smith v. State, this Court recognized the plurality opinion in Coleman as controlling. Smith, 149 So.3d at 1035. In that case, the trial judge ordered a competency evaluation but failed to hold a hearing on the matter. Smith raised this issue in a motion for post-conviction relief, and the State acknowledged the error. The State, however, argued that the proper remedy was a retrospective hearing. Id. This Court disagreed and provided that “that remedy is unavailable” under Coleman. Id. Instead, the Court found that where the purpose of a court-ordered mental evaluation was to determine competency to stand trial, the defendant “must be either retried or institutionalized following a mental evaluation and competency hearing under Rule 9.06.” Id.
¶ 26. Here, the State argues Hollie is not entitled to a competency determination or new trial because Hollie waived his right to a competency hearing by pleading guilty. Precedent does not support this position. The United States Supreme Court has stated unequivocally that “it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently ‘waive’ his right to have the court determine his capacity to stand trial.” Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); Sanders v. State, 9 So.3d 1132, 1135 (Miss.2009). The Supreme Court found it unconstitutional to deprive a criminal defendant of a competency hearing where competency is at issue. Pate, 383 U.S. at 385, 86 S.Ct. 836. In that case, the defendant raised the issues of competency to stand trial and insanity, but the trial court determined a hearing on these matters was unnecessary because the State introduced an expert’s report finding Robinson competent to stand trial. Id. at 376, 384, 86 S.Ct. 836.
¶27. On appeal, the prosecution in Pate, like the State and dissent here, argued that because Robinson failed to object before the trial court, the issue was waived. Id. at 384. The Supreme Court rejected that argument, finding “Robinson’s constitutional rights were abridged by his failure to receive an adequate hearing on his competence to stand trial[.]” Id. at 386, 86 S.Ct. 836. The Supreme Court also found that, while Robinson’s demeanor before the trial court was relevant to determining his competency, “it cannot be relied upon to dispense with a hearing on that very issue.” Id. (citing Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956)). Accordingly, the Supreme Court found that, because Robinson raised a legitimate concern regarding his competency to stand trial, it was reversible error not to hold a hearing on the same, despite the lack of a contemporaneous objection. See id. at 384-387, 86 S.Ct. 836. Consequently, the State’s and the dissent’s arguments are without merit. See id.
*832 ¶ 28. Moreover, this Court also has rejected this argument. In Sanders v. State, a case in which the Court cited Pate approvingly, the majority held that, where a competency evaluation is ordered, the trial court “ ‘shall conduct a hearing to determine if the defendant is competent’ and ... ‘shall make the finding a matter of record.’ ” Sanders, 9 So.3d at 1136 (quoting URCCC 9.06). Accordingly, the Court found where there is no hearing and the record fails to sufficiently demonstrate competency to stand trial, this is reversible error. Id. The dissent in Sanders, however, made the same argument as the dissent here makes, specifically, that failure to make a contemporaneous objection at trial waives this issue. Id. at 1142. A majority of this Court rejected that view, and as the Court previously has ruled on this very issue, we decline to deviate from the holding in Sanders.
¶29. We also note the dissent relies considerably on Dr. Lott’s report. Here, Hollie argues on appeal that Dr. Lott’s opinion that he was competent to stand trial failed to consider Hollie’s taped confession, and that Dr. Lott did not have Hollie’s full medical record. Dr. Lott’s findings, however, were never introduced into evidence prior to the court accepting Hollie’s guilty plea. Moreover, even if Dr. Lott’s report is considered, the United States Supreme Court has held that such testimony is “some evidence of [a defendant’s] ability to assist in his defense,” but alone it is not dispositive of the issue. Pate, 383 U.S. at 386, 86 S.Ct. 836.
¶ 30. Accordingly, for the reasons discussed above, we reverse Hollie’s conviction of capital murder and vacate his sentence of death. The trial court judge ordered a mental evaluation but never conducted a hearing on the matter. This is reversible error, and we now remand this case to the trial court to determine Hollie’s competence to stand trial. See Smith, 149 So.3d at 1035; Miss.Code Ann. § 99 — 19—105(6) (Supp.2014) (requiring the Court to review the validity of a death sentence and factual substantiation of the verdict). And, as this Court provided in Smith, Hollie must be “retried or institutionalized following a mental evaluation and competency hearing under Rule 9.06.” Smith, 149 So.3d at 1035.

B. Armed-Robbei-y Conviction and Sentence

¶ 31. This Court has a statutory duty, under Section 99 — 19—105(3)(b) and Section 99 — 19—105(6) to conduct an inquiry into the evidentiary support and validity of any prior conviction determined to be an aggravating factor. See Miss.Code Ann. § 99—19—105(3) (Supp.2014); Miss.Code Ann. § 99—19—105(6) (Supp.2014). This Court has interpreted this mandate to require our courts to make a determination that the record of the prior conviction is accurate and the defendant to be sentenced is indeed the person who was previously convicted. Nixon v. State, 533 So.2d 1078, 1099 (Miss.1987), overruled on other grounds by Wharton v. State, 734 So.2d 985 (Miss.1998); see Phillips v. State, 421 So.2d 476, 481 (Miss.1982) (providing the same for habitual-offender enhancements and noting that trial courts are not required to relitigate the prior conviction). The Court “is not required to go beyond the face of the prior convictions .... ‘[I]f, on its face, the conviction makes a proper showing that a defendant’s prior plea of guilty was both knowing and voluntary, that conviction may be used for the enhancement of the defendant’s pun-ishment_’” Nixon, 533 So.2d at 1099 (quoting Phillips, 421 So.2d at 481); Jackson v. State, 684 So.2d 1213, 1236 (Miss.1996) (providing courts may look to the face of the prior conviction to determine *833 validity and need' not “retry all prior convictions”); see also Culberson v. State, 612 So.2d 342, 344 (Miss.1992) (providing that, on a motion for post-conviction relief, an assault upon a prior conviction used as an aggravating factor should be conducted in a separate proceeding apart from the capital-murder, post-conviction proceeding).
¶ 32. Therefore, as a general rule, this Court mil not inquire into the validity of a prior conviction used as an aggravating circumstance if it appears valid on its face. Here, however, circumstances dictate we examine Hollie’s armed-robbery conviction with a higher level of scrutiny. This is supported by our statutory obligation to ensure Hollie’s death sentence is valid — if the armed-robbery conviction, the only aggravator the jury found, is vacated, so too must be Hollie’s death sentence. And, as a practical matter, this is an efficient use of judicial resources.
¶ 33. The record before us today contains Hollie’s murder conviction and sentence and also that of his armed robbery of Patel. Hollie raises a nonfrivolous allegation that he lacked the competence to plead guilty to the armed robbery, the same allegation he raises as to his capital-murder conviction and sentence. The order for the competency evaluation was for both Hollie’s capital-murder charge and his armed-robbery charge. All of the armed-robbery and capital-murder proceedings, including the plea hearings and sentencing, were conducted concurrently.
¶ 34. Accordingly, because there is a credible concern about the validity of the prior conviction used as an aggravating factor, the Court has before it an adequate record of that prior conviction, and the Court is required by statute to ensure the validity of the death sentence, this Court will undertake a review of Hollie’s prior armed robbery that goes beyond the mere face of the conviction. See Miss.Code Ann. § 99—19—105(6) (Supp.2014); see also Gregg v. Georgia, 428 U.S. 153, 167, 198, 206, 96 S.Ct. 2909, 2922, 2937, 2941, 49 L.Ed.2d 859 (1976) (affirming- death sentence in part because the Georgia statute, like Mississippi’s, required the Georgia Supreme Court to review the jury’s findings regarding - aggravating factors, including prior convictions); Gillett State, 56 So.3d 469, 506-07 (Miss.2010) (analyzing defendant’s prior conviction used as an. aggravating factor to determine if the conviction was for a violent felony); Evans v. State, 725 So.2d 613, 684 (Miss.1997) (discussing whether a plea of nolo contendere qualified as a prior conviction of a violent felony for purposes of an aggravating circumstance); Phillips, 421 So.2d at 481; Nixon, 533 So.2d at 1099; Jackson v. State, 684 So.2d at 1236.
¶ 35. As noted above, the trial court ordered a mental evaluation of Hollie regarding his armed-robbery charge. The' evaluation was conducted, but no hearing was held. Nevertheless, the trial court accepted Hollie’s guilty plea to armed robbery, which subsequently was used as the aggravating factor in his death-penalty sentencing phase. Ordering the mental-evaluation, but failing to hold the mandatory hearing on the matter is reversible error. Smith, 149 So.3d at 1035. As a result, we reverse Hollie’s conviction for armed robbery as well and vacate that sentence. This case is remanded to the. trial court to determine Hollie’s competence to stand trial. See Smith, 149 So.3d at 1035; Miss.Code Ann. § 99—19—105(6) (Supp.2014).
CONCLUSION
¶ 36. For the reasons discussed above, the Court vacates Hollie’s guilty pleas to armed robbery and capital murder, reverses his convictions, vacates his sen *834 tences, and remands this matter to the trial court for a mental evaluation and competency hearing under Rule 9.06. If the trial court finds Hollie competent, it shall try Hollie on both charges. If the trial court finds that Hollie is incompetent, it shall order Hollie committed to the Mississippi State Hospital or another appropriate mental health facility in accordance with Rule 9.06.
¶ 37. REVERSED, VACATED AND REMANDED.
DICKINSON, P.J., KITCHENS, CHANDLER AND KING, JJ., CONCUR. DICKINSON, P.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., AND KING, J.; KITCHENS, J., JOINS IN PART. KITCHENS, J, SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., DICKINSON, P.J., AND KING, J. LAMAR, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY PIERCE AND COLEMAN, JJ.; DICKINSON, P.J., JOINS IN PART. RANDOLPH, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION.

. M.A. Bass and Renee Berry represented Hollie at trial. After Hollie was sentenced, Bass sent a letter to Hollie asking him to sign an affidavit acknowledging that he had instructed Bass not to file an appeal, or alternatively, to sign an affidavit authorizing Bass to file the appeal if Hollie had changed his mind. The record does not indicate whether Hollie signed either affidavit; neither is in the record.

. After being substituted as counsel, the Office of the State Public Defender has actively pursued Hollie’s incompetency defense. This includes having Hollie examined by Dr. Donna Schwartz-Watts, a forensic psychiatrist, and including in the record parts of Hollie’s Mississippi Department of Corrections medical records regarding his current mental status and treatment. Hollie also argues that Dr. Lott’s opinion did not consider Hollie’s taped confession, and that Dr. Lott did not have Hollie’s full medical record before him. But because Dr. Lott’s and Dr. Schwartz-Watts’s findings either were not properly before the trial court (Lott report) or were not before the trial court at all (Schwartz-Watts report), we do not consider either.

.The other claims Hollie raises are: (1) The death sentence must be set aside because the trial court failed to properly ensure that Hollie understood all of the constitutional rights he was waiving by refusing to permit any defense to any aspect of tire sentencing process, or otherwise to ensure that such waiver was knowing and voluntary; (2) The death sentence must be set aside because the sentencing verdict returned by the jury failed to include factual findings sufficient to support that Hollie had been previously convicted of a violent felony, the sole aggravating circumstance upon which the jury’s death sentence relied; (3) The death sentence must be set aside because there was no evidentiary basis for permitting the jury to consider or find the only aggravating circumstance that it purported to find; (4) The death sentence must be set aside because the trial court’s written and oral sentencing instructions misled the jury on a material matter by incorrectly informing it that neither a death sentence nor a *829 sentence of life in prison without parole could be imposed except on a unanimous verdict by the jury as to sentence; (5) Permitting Hollie to employ the sentencing trial as a means of attempting to commit suicide by jury is against public policy and requires reversal of the death sentence; (6) The death sentence must be set aside because it is constitutionally and statutorily disproportionate; (7) The cumulative effect of the errors in the trial court mandates reversal of any convictions obtained, and/or of the sentence of death imposed on Hollie in this matter.