# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-00785-COA

**LARRY POINTER, III A/K/A LARRY DONNELL POINTER, III A/K/A LARRY POINTER, JR. A/K/A LARRY POINTER A/K/A NIP**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/04/2015 |
| TRIAL JUDGE: | HON. JOHN KELLY LUTHER |
| COURT FROM WHICH APPEALED: | MARSHALL COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES MOLLIE MARIE MCMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | BENJAMIN F. CREEKMORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF MURDER AND SENTENCED TO LIFE IMPRISONMENT AND CONVICTED OF AGGRAVATED ASSAULT AND SENTENCED TO TWENTY YEARS, WITH FIFTEEN YEARS SUSPENDED AND FIVE YEARS POST-RELEASE SUPERVISION, WITH THE SENTENCES TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED - 08/30/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., WILSON AND GREENLEE, JJ.**

**WILSON, J., FOR THE COURT:**

¶1.    A Marshall County jury convicted Larry Pointer III of murder and aggravated assault.

On appeal, Pointer argues that the evidence was insufficient to support his convictions; that the trial judge erred by allowing the jury to hear unreliable testimony from his grandmother; and that his convictions must be reversed because the trial judge failed to hold a pretrial competency hearing. As we explain below, there was sufficient evidence to support Pointer's convictions, and the other issues that he raises on appeal are without merit. Accordingly, we affirm Pointer's convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

¶2. On September 15, 2012, Larry Pointer III, who is known as "Nip" to friends and family, drove his friend Robert Brown and his cousin Ray Crawford from Marshall County to Memphis. Brown asked Pointer to drive him to Memphis for some undisclosed purpose, and Pointer asked Crawford to join them. On their way back to Marshall County, Pointer and Brown argued after Pointer claimed that Brown had reneged on a promise to give him gas money. The argument escalated, and Brown threatened to kill Pointer. Crawford fell asleep at some point after the argument started. While Crawford slept, Pointer drove to the house where he and his father, Larry Pointer Jr. (Larry), lived with his grandmother, Nellie Pointer (Nellie). Pointer told Brown that he was going inside to get gas money.

¶3. Crawford testified that he was awakened by a gunshot to the arm. Crawford was sitting in the backseat of Pointer's car, which was parked outside of the house. Crawford ran inside the house and told Nellie that he had been shot, and Nellie called 911. A recording of the 911 call was played at trial. Nellie told the dispatcher that Crawford had been shot in

2

the arm. Nellie then began screaming hysterically and yelling, "Larry, don't touch that boy!" She mentioned a knife, and the dispatcher asked who had a knife. Nellie responded, "My grandson." Nellie then mentioned stabbing, and the dispatcher asked her who was doing the stabbing, but Nellie said she did not know. The dispatcher also asked who had fired the shot that hit Crawford, but Nellie again said she did not know.

¶4. When law enforcement arrived, Brown was lying on the ground outside of the house. He had suffered more than two dozen stab wounds and was already dead. Pointer, Nellie, and Crawford were present at the scene. Pointer was taken into custody and subsequently gave two recorded statements to law enforcement. He gave his first statement to Investigator Kelly McMillin and Deputy Justin Gray of the Marshall County Sheriff's Department. Pointer told them that he went inside his grandmother's house to get gas money, and when he returned to his car, Brown was gone. Pointer stated that as he waited in his car with Crawford, who was still asleep, Brown appeared with a shotgun that he had retrieved from the trunk of the car. Pointer claimed that Brown shot Crawford in the arm. Pointer and Brown then struggled over both the gun and a knife that Pointer kept in his car. Pointer somehow picked up a beer bottle, struck Brown in the head with it, and then picked up the knife. Pointer then stabbed Brown repeatedly. Pointer admitted that he may have stabbed Brown too many times, but he claimed that he was afraid that Brown would kill him. After stabbing Brown, Pointer went inside the house to check on Crawford.

¶5. Investigator Jason Mills, also with the sheriff's department, subsequently learned that

Pointer's father, Larry, was also present when Crawford was shot and Brown was killed. Based on this information, McMillin and Mills re-interviewed Pointer. During this second interview, Pointer admitted that Larry was present. Pointer stated that when he arrived at Nellie's house, he went inside and told Larry that Brown had threatened him. Larry then picked up a shotgun, followed Pointer outside, and shot at Brown, who was still sitting in the car. However, the bullet struck Crawford, who then ran inside Nellie's house. Pointer and Larry then pulled Brown out of the car and began beating him. After Pointer hit Brown over the head with a beer bottle, he told Larry to go inside and get a knife. When Larry returned with the knife, Pointer first asked Larry to stab Brown. When Larry declined, Pointer took the knife from him and repeatedly stabbed Brown. According to Pointer, Larry told him to put the shotgun in the car to help support a self-defense claim.

¶6. Pointer was indicted for the murder of Brown and the aggravated assault on Crawford. At trial, Crawford testified that he did not see who shot him or any of the ensuing altercation that led to Brown's death; however, he stated that Larry later apologized for shooting him.

¶7. Nellie's testimony was evasive and difficult to follow. She testified that she was asleep when Pointer entered her house that evening looking for Larry. She said that Pointer did not seem upset or angry. She testified that Crawford entered the house a short time later and had been shot in the arm, but she did not know who shot him. She said that she then saw Brown, whom she did not know, lying on the ground in front of her house. She also saw Pointer outside. She claimed that when she could be heard on the 911 call telling "Larry"

4

not to touch Brown, she was talking to Pointer, even though she usually called him by his nickname, Nip. Nellie stated that it was her understanding that Pointer fought with Brown, although she claimed that she did not see them fight. She also claimed that she never saw Larry outside fighting with Brown. Nellie admitted that she told Larry to leave before law enforcement arrived. She stated that she did so because she feared that he would be blamed for whatever had occurred that night.

¶8.     At trial, Pointer's theory of the case was that Larry acted alone in shooting Crawford and stabbing Brown to death. Pointer's attorney argued that Larry could be heard threatening Brown in the recording of the 911 call and that Nellie was covering for him. However, the jury convicted Pointer on both counts. The court sentenced him to life in the custody of the Mississippi Department of Corrections for murder and twenty years, with fifteen years suspended, for aggravated assault. Pointer filed a motion for a judgment notwithstanding the verdict or a new trial, which was denied, and a timely notice of appeal.

## DISCUSSION

¶9.     Pointer raises four issues on appeal. He argues that there was insufficient evidence to support an aggravated assault conviction and that his motions for a directed verdict and judgment notwithstanding the verdict should have been granted.[1] He makes the same argument with respect to his murder conviction and argues that his confession was

---

[1] This is the only issue raised by Pointer's appellate counsel. Pointer raised the remaining issues in his pro se supplemental brief.

insufficient to support a guilty verdict. He also argues that it was error to allow the jury to hear his grandmother's testimony because it was coerced and unreliable. Finally, Pointer claims that the trial court erred by not holding a competency hearing.[2] There is no merit to any of Pointer's claims. Therefore, we affirm.

## I.      Sufficiency of the Evidence

¶10.    Pointer claims that there was insufficient evidence to support his convictions for aggravated assault and murder. Specifically, he argues that there was no evidence that he acted in concert with his father to shoot Crawford and that his confession was insufficient to convict him of murder. When a defendant challenges the sufficiency of the evidence, we examine the evidence in the light most favorable to the State, and we will affirm the conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 315 (1979)). We will reverse and render a judgment of acquittal only when "the facts and inferences considered in a challenge to the sufficiency of the evidence 'point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty.'" *Id*. (quoting *Edwards v. State* 469 So. 2d 68, 70 (Miss. 1985)).

---

[2] In his supplemental reply brief, Pointer also asserts that the State suppressed unspecified "scientific and physical evidence." However, issues raised for the first time in a reply brief are deemed waived. *See, e.g.*, *Sanders v. State*, 678 So. 2d 663, 669-70 (Miss. 1996). Procedural bar notwithstanding, the argument also lacks support in the record.

## A. Aggravated Assault

¶11. Pointer's indictment alleged that he "willfully and feloniously, purposely and knowingly cause[d] bodily injury to Ray Crawford with a deadly weapon (while attempting to cause bodily harm/death to Robert Brown, Jr.)."[3] At trial, the State maintained that Pointer encouraged Larry to shoot Brown. Pointer argues that the State failed to prove that he encouraged Larry to follow him outside and shoot at Brown; instead, Pointer claims he was merely present when Larry fired the gun.

¶12. Because Pointer did not actually pull the trigger, his aggravated assault conviction required proof that he aided and abetted or acted in concert with Larry in shooting at Brown. "Every person who shall be an accessory to any felony, before the fact, shall be deemed and considered a principal, and shall be indicted and punished as such." Miss. Code Ann. § 97-1-3 (Rev. 2014). To be convicted as an accessory before the fact—i.e., as an aider and abettor—a person must have done something to "incite, encourage, or assist the actual perpetrator in the commission of the crime." *Vaughn v. State*, 712 So. 2d 721, 724 (¶11) (Miss. 1998) (quoting *Malone v. State*, 486 So. 2d 360, 363 (Miss. 1986)). This can be done through "acts, words, signs, motions, or any conduct which unmistakably evinces a design to encourage, incite or approve of the crime, or even by being present, with the intention of

---

[3] "Under the common law doctrine of transferred intent, '[t]he malicious intent of the unlawful act directed toward one person is transferred to the other person.'" *Hitt v. State*, 988 So. 2d 939, 942 (¶12) (Miss. Ct. App. 2008) (quoting *Dobbins v. State*, 766 So. 2d 29, 33 (¶11) (Miss. Ct. App. 2000)).

giving assistance, if necessary, though such assistance may not be called into requisition." *McDowell v. State*, 984 So. 2d 1003, 1011 (¶21) (Miss. Ct. App. 2007) (quoting *Swinford v. State*, 653 So. 2d 912, 915 (Miss. 1995)). However, "the mere presence of a person is not sufficient even though such person might have approved of the crime." *Id.* (quoting *Griffin v. State*, 293 So. 2d 810, 812 (Miss. 1974)).

¶13.    Evidence presented at trial supports Pointer's conviction for aggravated assault. The jury heard Pointer's second statement to law enforcement, in which he told officers that he told Larry that Brown was threatening his life, which led to Larry shooting at Brown. Officers asked Pointer why Larry shot the gun, and Pointer responded, "I'd done told him my life had been threatened." Though Pointer never specifically admitted that he encouraged or asked Larry to shoot Brown, the evidence permitted a reasonable inference that Pointer encouraged Larry to do so. Pointer admitted that he went to Larry's bedroom and told Larry that Brown was threatening his life. Pointer also admitted that he knew that Larry had a gun in the bedroom. And when officers asked him why he had not shot at Brown himself, Pointer responded, "My daddy did it; I wanted to do it." Finally, there was no evidence that Pointer expressed surprise or attempted to halt the assault after Larry shot at Brown; rather, the evidence indicated that Pointer personally continued the assault and ultimately stabbed Brown to death. Collectively, this was sufficient evidence for rational jurors to find that Pointer acted in concert with his father to commit the assault against Crawford. Accordingly, the evidence is sufficient to sustain Pointer's conviction for aggravated assault.

8

### B. Murder

¶14. Pointer also argues that the State presented insufficient evidence to convict him of murder and, specifically, that his confession was not sufficient to support the conviction. However, in both of his statements to law enforcement, Pointer admitted to stabbing Brown repeatedly. Evidence presented through Pointer's grandmother also supported his conviction. Although the recording of the 911 call was chaotic and difficult to understand at times, Pointer's grandmother stated clearly that her "grandson" had the knife that she was screaming about. Finally, Nellie somewhat reluctantly testified that when she yelled at "Larry" to leave Brown alone, she was referring to Pointer. There was sufficient evidence for rational jurors to convict Pointer of murder.

### II. Nellie's Testimony

¶15. Pointer claims that the court erred by allowing the jury to hear his grandmother's testimony because it was coerced and unreliable. He also agues that the judge should have given a "curative instruction" about the "injurious effect" of the allegedly coerced testimony. Finally, he complains that his attorney did not object to Nellie's testimony.

¶16. These arguments are without merit. Nellie was not an accomplice or informant, so there was no basis for the judge to instruct the jury to regard her testimony with caution or suspicion. Witness credibility is an issue "properly resolved by the jury." *Moore v. State*, 969 So. 2d 153, 156 (¶11) (Miss. Ct. App. 2007). Also, on cross-examination, Pointer's trial counsel competently brought out the potential credibility issues with Nellie's testimony.

Nellie's testimony was properly admitted, and she was subject to full cross-examination. No error was committed in connection with her testimony.

### III. Competency Hearing

¶17. Pointer claims that he was not given a competency hearing after his psychological evaluation to assess his competency to stand trial. The Mississippi Supreme Court has held that a trial court *must* hold a competency hearing once the court has ordered a psychiatric evaluation for that purpose. *See Coleman v. State*, 127 So. 3d 161, 166 (¶14) (Miss. 2013); *Sanders v. State*, 9 So. 3d 1132, 1136 (¶16) (Miss. 2009); URCCC 9.06. Pointer's counsel filed a motion requesting a mental evaluation, including an evaluation of his competency to stand trial, and the court granted the motion. Pointer's counsel subsequently moved to withdraw that motion and to set aside the court's order granting it, apparently because she no longer believed that an evaluation was necessary. However, the court did not rule on the motion, and Dr. Criss Lott, a clinical psychologist, conducted the evaluation. Dr. Lott concluded that Pointer was competent to stand trial.[4] A competency hearing was held on June 6, 2014.[5] At the hearing, Dr. Lott testified that Pointer was competent, and his report

---

[4] "For a criminal defendant to be deemed mentally competent to stand trial, he must have 'the sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . and . . . a rational as well as factual understanding of the proceedings against him.'" *Hollie v. State*, 174 So. 3d 824, 829 (¶19) (Miss. 2015) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam).

[5] The State did not respond to this argument, which was raised in Pointer's pro se supplemental brief, and the original record on appeal did not reflect that a competency hearing was held. In fact, a competency hearing was held, and on our own motion, we ordered the record supplemented to include the hearing transcript.

was received into evidence. Based on Dr. Lott's report and testimony, the circuit court found Pointer competent to stand trial. This satisfies the requirements of Rule 9.06 and the Supreme Court decisions interpreting it, and the trial judge's finding was not "manifestly against the overwhelming weight of the evidence." *Bridges v. State*, 807 So. 2d 1228, 1230 (¶10) (Miss. 2002) (quoting *Emanuel v. State*, 412 So. 2d 1187, 1189 (Miss. 1982)). Pointer's claim that no hearing was held is simply wrong, and this issue is without merit.

**CONCLUSION**

¶18. There was sufficient evidence to support Pointer's convictions, and he has identified no error, reversible or otherwise, in the conduct of his trial. Accordingly, we affirm.

¶19. **THE JUDGMENT OF THE MARSHALL COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT AND CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS, WITH FIFTEEN YEARS SUSPENDED AND FIVE YEARS POST-RELEASE SUPERVISION, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THE SENTENCES TO RUN CONSECUTIVELY, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MARSHALL COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, JAMES AND GREENLEE, JJ., CONCUR.**