# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-01818-SCT

*TERRY PITCHFORD*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 05/13/2015 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER, JR. |
| TRIAL COURT ATTORNEYS: | RAYMOND M. BAUM |
| | RAY CHARLES CARTER |
| | DOUG EVANS |
| | ALISON R. STEINER |
| | GLENN S. SWARTZFAGER |
| | SCOTT A. C. JOHNSON |
| | CAMERON LEIGH BENTON |
| | JASON L. DAVIS |
| | MARVIN L. WHITE, JR. |
| COURT FROM WHICH APPEALED: | GRENADA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF CAPITAL POST-CONVICTION COUNSEL |
| | BY: JAMILA ALEXANDER VIRGIL |
| |     LOUWLYNN VANZETTA WILLIAMS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: CAMERON LEIGH BENTON |
| |     JASON L. DAVIS |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY - POST CONVICTION |
| DISPOSITION: | POST-CONVICTION RELIEF DENIED - 10/19/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**EN BANC.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1. Terry Pitchford was convicted of capital murder in February 2006 in the Grenada County Circuit Court and sentenced to death. This Court affirmed his conviction and sentence on direct appeal. *See Pitchford v. State*, 45 So. 3d 216 (Miss. 2010). Pitchford thereafter filed a motion for leave to proceed in the trial court with a petition for post-conviction relief (PCR), arguing *inter alia* he had not received a competency hearing in violation of Rule 9.06 of the Uniform Rules of Circuit and County Court Practice. This Court granted Pitchford's motion in part and ordered the trial court to conduct a retrospective competency hearing.

¶2. Before the hearing was conducted, a plurality of this Court held that retrospective competency hearings do not satisfy the purpose of Rule 9.06. *See Coleman v. State*, 127 So. 3d 161 (Miss. 2013). Despite this ruling, Pitchford's retrospective competency hearing took place in May 2015. The trial court found that Pitchford was competent to stand trial in February 2006 and denied Pitchford's PCR motion.

¶3. Pitchford appeals that judgment, claiming the retrospective competency hearing was (1) an inadequate remedy for purposes of Rule 9.06, and (2) the State's experts did not apply the proper standard for competency to stand trial.

¶4. Finding no merit in Pitchford's claims, we affirm the judgment of the trial court denying Pitchford's PCR petition based on the trial court's finding that Pitchford was competent to stand trial in February 2006.

## FACTS AND PROCEDURAL HISTORY

2

¶5.    On the morning of November 7, 2004, Walter Davis and his son entered the Crossroads Grocery store in Grenada County, Mississippi, where they discovered the lifeless body of Reuben Britt. Davis contacted authorities, and investigators with the Grenada County Sheriff's Department responded to the scene. The investigation concluded Britt had been shot with two different types of firearms. Investigators also found missing from the store a cash register, cash, and a .38 caliber revolver belonging to Britt.

¶6.    Investigators received information that a vehicle owned by Pitchford matched the description of the vehicle used by Britt's assailants, and that Pitchford had been part of a previous robbery attempt at the store, days prior to Britt's killing. Based on this information, investigators went to Pitchford's residence, where they found a car matching the description they had received from sources.

¶7.    Shirley Jackson, Pitchford's mother, gave officials permission to search the car. The search produced Britt's .38 caliber revolver.

¶8.    Pitchford later confessed that he and Eric Bullins had gone to the store to rob it. Pitchford said Bullins had shot Britt three times, and that he (Pitchford) had fired shots into the floor. Pitchford also told investigators that he had attempted to rob the store a week prior to Britt's killing.

¶9.    Pitchford was indicted in January 2005 for capital murder. In February 2005, counsel appointed to represent Pitchford filed a motion stating that "defendant would show that he has a history of mental problems and that this [c]ourt should appoint a . . . psychologist or psychiatrist for the purpose of conducting a thorough mental examination." The motion also

3

stated that the defendant "intends to offer expert witness testimony in the field of psychiatry, on the issue of the defendant's competence to stand trial, and insanity at the time of the alleged offense. The defendant requests this [c]ourt appoint a competent psychiatrist to assist him in the defense of this matter." Pursuant to that motion and to agreement by the parties, the trial court ordered that Pitchford be evaluated at the Mississippi State Hospital to determine if he was competent to stand trial.

¶10. Pitchford was evaluated and tested by doctors at the state hospital on January 11 and 25, 2006. The doctors (Reb McMichael, Criss Lott, and Gilbert Macvaugh) determined that Pitchford was competent to stand trial. They noted that testing and observation indicated Pitchford was attempting to malinger symptoms of mental illness. They unanimously concluded that Pitchford "has the sufficient present ability to consult with an attorney with a reasonable degree of rational understanding in the preparation of his defense, and that he has a rational as well as factual understanding of the nature and object of the legal proceedings against him."

¶11. No formal competency hearing was held. The trial court, however, held a motions hearing on February 2, 2006, during which the court considered a motion to continue filed by the defense that same day. As part of that motion, defense counsel argued that a continuance was needed to seek an independent mental evaluation. Defense counsel claimed more time was needed to gather mitigating evidence with the assistance of a defense expert. Defense counsel told the court he had consulted with an expert and had reason to believe that

4

further testing might reveal a neurological defect that could be helpful mitigation evidence at trial.

¶12.    After hearing argument from both parties and having reviewed the written report from the court-appointed experts, the trial court denied the defense's request for continuance. The trial court found that doctors from the state hospital had written a very thorough analysis and had conducted all the evaluations that were necessary. They came up with nothing that would indicate that Pitchford has "any neurological problems, any psychological problems, any low I.Q., [or] anything that would justify another person coming in and evaluating Mr. Pitchford."

¶13.    The case proceeded to trial on February 6, 2006. A jury found Pitchford guilty of capital murder and imposed a sentence of death. This Court affirmed Pitchford's conviction and death sentence on direct appeal. *Pitchford*, 45 So. 3d 216.

¶14.    Pitchford thereafter sought leave from this Court to proceed in the trial court with a PCR petition. Pitchford raised a number of claims, including the claim that he was denied a competency hearing prior to his trial for capital murder. This Court denied all claims except Pitchford's claim pertaining to a competency hearing. This Court ordered that the matter be remanded to the trial court for a hearing on whether Pitchford was competent to stand trial at the time the criminal trial took place in February 2006.

¶15.    The hearing was held on May 11 and 12, 2015. Pitchford called five witnesses on his behalf: Joseph Cornish (an inmate housed with Pitchford prior to trial in the Grenada County jail); Jonamath Thompson (an inmate also housed with Pitchford prior to trial); Shirley

Jackson (Pitchford's mother); Dominique Hogan (Pitchford's former girlfriend and the mother of Pitchford's only child); and Dr. Rahn Bailey (a psychiatrist who had evaluated Pitchford on February 4, 2006, just days prior to Pitchford's criminal trial). For the State, Drs. McMichael and Macvaugh testified.

¶16. At the conclusion of the hearing, the trial court issued a bench ruling, followed by a written order, finding that Pitchford was competent to stand trial in February 2006.

¶17. The trial court specifically found "of no consequence" Cornish's or Thompson's testimony. The trial court found their statements that Pitchford occasionally talked to himself or appeared at times to be depressed while in jail prior to trial to be of no import. The trial court added, however, that even if their testimony was true, it "offers nothing that would suggest that Pitchford was not competent to stand trial."

¶18. The trial court noted that Jackson testified that Pitchford had claimed to have heard voices in his head as a child, and would occasionally "slap himself upside the head," and that he may have attempted suicide when he was fifteen or sixteen years of age. But Jackson also testified that she did not take this claimed behavior seriously at the time. The court stated, "her corresponding inaction confirms that she didn't find these alleged incidents of such a nature that she believed her son needed medical attention."

¶19. The trial court noted that Hogan had testified she one time HAD heard Pitchford talking to himself while in the shower and another time when he appeared to be "air boxing." But the court found that nothing to which Hogan testified offered any insight into Pitchford's competence to stand trial.

6

¶20.    As to the respective expert witnesses, the trial court found the State's expert witnesses more credible than the defense's expert witness.  According to the court, Dr. Bailey's report and testimony was "long on conclusions and very short on facts to support his conclusions." Dr. Bailey's "signed and unsigned reports contradicted each other, and portions of the reports contradicted other portions of the reports."  Dr. Bailey's testimony "was also very contradictory," and "there was not a foundational basis for much of his testimony," and the court found most of it "lacking in credibility and believability."

¶21.    The trial court also noted that Pitchford was represented at trial by one of the leading capital defense lawyers in the state, "if not the entire Southeastern portion of this country, that being Ray Charles Carter[,]" who was assisted by Ray Baum, "a long-time criminal defense attorney."  At no time did defense counsel ever indicate to the court they were having trouble communicating with Pitchford.  The court also found it "telling" that neither Carter nor Baum was called by Pitchford to testify at the retrospective competency hearing.

¶22.    The trial court took into consideration the transcript from Pitchford's guilty-plea hearing, held in January 2006, less than a month prior to Pitchford's criminal trial.  Pitchford had petitioned the trial court to enter a guilty plea.  But after extensive colloquy with the court, Pitchford withdrew his guilty plea and elected to go to trial.  The court found the transcript of that proceeding "shows an individual that understood the legal process and was in full command of his mental faculties."  Pitchford's defense attorney, Carter, also had signed an attorney's acknowledgment form that indicated he was satisfied that Pitchford had the mental capacity to enter a valid guilty plea at the time.

¶23.   Based on the evidence before it, the trial court found that Pitchford had failed to prove by a preponderance of the evidence that he was not competent to stand trial in February 2006. The court denied Pitchford's PCR claim.

¶24.   This appeal followed.  Additional facts and procedural history will be related as necessary throughout our discussion.

## DISCUSSION

¶25.   We address together Pitchford's claim that the retrospective competency hearing was an inadequate remedy for purposes of Rule 9.06, and that the State's experts did not apply the proper standard for competency to stand trial.

¶26.   Relying on this Court's decision in *Coleman*, 127 So. 3d 161, Pitchford contends his capital-murder conviction should be reversed because the retrospective competency hearing failed to satisfy the purposes of Rule 9.06, which *Coleman* held does not contemplate retrospective competency hearings.  Pitchford argues that the inadequacies of such hearings led this Court to criticize and reject them in *Coleman*.  Pitchford contends the same inadequacies recognized in *Coleman* permeated his May 2015 retrospective competency hearing.

¶27.   The State argues that Pitchford's claim is self-defeating based on the plain language found in *Coleman*, which expressly noted Pitchford's case and distinguished it by stating:

> Finally, we note that the facts and circumstances presented in *Pitchford* were significantly different than those before us in the present case.  In *Pitchford*, the trial court held a hearing, but defense counsel was not given notice that mental competency to stand trial was to be determined at that time. *Pitchford*, 2010-DR-01032-SCT (Order of February 14, 2013).  Here, the trial court outright denied Coleman a hearing and determined that he somehow had

8

waived his right to a competency hearing, despite repeated requests for such a proceeding both before and during trial. In *Pitchford*, the defendant's competence to stand trial was determined based on a written report from the Mississippi State Hospital; but here, the trial court based its determination of Coleman's competence to stand trial on a four-page summary report. *Pitchford*, 2010–DR–01032–SCT. We found that, under the facts in *Pitchford*, where the trial court held a mental competency hearing but did not give notice to defense counsel, a retrospective mental competency hearing was sufficient to guard the defendant's due process rights. *Id.* On the other hand, under the facts in this case, when the trial court simply denied the defendant a hearing, we find that a retrospective mental competency determination does not adequately protect Coleman's due process rights.

*Coleman*, 127 So. 3d at 167-68.

¶28. The State further contends that Pitchford repeatedly attacks issues that arose prior to his criminal trial in February 2006–issues that should have been raised on direct appeal, such as lack of notice with regard to his competency hearing prior to trial, lack of opportunity to present witnesses and other evidence, and allegations that the trial court's pretrial competency determination was erroneous. The State submits these claims are procedurally barred and/or were nonetheless cured by the May 2015 retrospective competency hearing.

¶29. For reasons to be explained, we overrule *Coleman* and those cases in agreement with it that a retrospective competency hearing does not adequately protect a defendant's due process rights. The great of weight of authority holds that such a hearing does not violate a defendant's due process rights when the facts of the case allow for it.

**Legal Competence**

¶30. It is a violation of due process to try or convict a criminal defendant who is legally incompetent. *Pate v. Robinson*, 383 U.S. 375, 378, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966). This prohibition is fundamental to our adversarial system of justice, and such circumstance

9

denies a defendant's right to a fair trial. ***Drope v. Missouri***, 420 U.S. 162, 172, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975); ***Pate***, 383 U.S. at 385, 86 S. Ct. 836.

¶31. The standard for competency to stand trial is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," and "has a rational as well as a factual understanding of the proceedings against him." ***Gammage v. State***, 510 So. 2d 802, 803 (Miss. 1987) (citing ***Dusky v. United States***, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960) (per curium)). Although a defendant may be competent at the commencement of trial, "a trial court must always be alert to circumstances [throughout trial] suggesting a change that would render the accused unable to meet the standards of competence to stand trial." ***Drope***, 420 U.S. at 181.

¶32. The law, however, presumes a criminal defendant competent to stand trial. ***Evans v. State***, ___So. 3d ____, 2017 WL 2592415, \*4 (Miss. June 15, 2017). And the defendant bears the burden to prove "by substantial evidence that [he or she] is mentally incompetent to stand trial." ***Evans v. State***, 725 So. 2d 613, 660 (Miss. 1997) (quoting ***Medina v. California***, 505 U.S. 437, 448, 112 S. Ct. 2572, 120 L. Ed. 2d 353 (1992)).

**Rule 9.06**

¶33. At the time of Pitchford's criminal trial, Rule 9.06 applied. It provides:

> If before or during trial the court, of its own motion or upon motion of an attorney, has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination by some competent psychiatrist selected by the court in accordance with § 99-13-11 of the Mississippi Code Annotated of 1972.
>
> After the examination the court shall conduct a hearing to determine if the defendant is competent to stand trial. After hearing all the evidence, the court

10

shall weigh the evidence and make a determination of whether the defendant is competent to stand trial. If the court finds that the defendant is competent to stand trial, then the court shall make the finding a matter of record and the case will then proceed to trial. If the court finds that the defendant is incompetent to stand trial, then the court shall commit the defendant to the Mississippi State Hospital or other appropriate mental health facility.

URCCC 9.06 (emphasis added).[1]

¶34. In September 2005, based on an ore tenus motion of the parties, the trial court granted a request to appoint experts at the state hospital to examine Pitchford and "determine his competency to stand trial and whether or not under the *M'Naghten*[2] standard he is insane and whether or not under the *Atkins*[3] ruling he is [intellectually disabled]." The order also instructed examination of Pitchford to determine "any mitigating circumstances[.]" Pitchford's examination was not conducted until January 11, 2006, due to a backlog of criminal cases assigned to the state hospital for evaluations. No psychological testing was performed until January 26, 2006.

¶35. On February 2, 2006, Pitchford's defense counsel filed a lengthy motion for a continuance, requesting additional time to conduct a more "thorough mitigation

---

[1] Rule 9.06 has since been replaced by Rule 12 of the Mississippi Rules of Criminal Procedure (effective July 1, 2017). Mississippi Rule of Criminal Procedure 12.5(a) departs from Rule 9.06's mandatory-hearing requirement. In the absence of a motion by the court or the parties, a hearing is no longer mandatory, but permissible. *See* Miss. R. Cr. P. 12.5(a) cmt.

[2] *M'Naghten*'s case, 8 Eng. Rep. 718 (1843) (establishing test applied in a number of states to determine whether a defendant is competent to stand trial).

[3] *Atkins v. Virginia*, 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002) (holding that execution of mentally retarded criminals are "cruel and "unusual" under Eighth amendment to the United States Constitution).

11

investigation" into Pitchford's "life history," given that this was a death-penalty case. The motion contained numerous arguments in support of the request, centering on the claim that Pitchford had a right to have the evaluations conducted by doctors at the state hospital reviewed by an independent expert in order to help prepare an adequate defense for both the culpability and penalty phases of trial.

¶36. No express issue or concern was raised in the defense's motion as to Pitchford's competency to stand trial. And the defense's motion concluded as follows: "the defendant respectfully moves this [c]ourt for a continuance of the trial date now set for February 6, 2006 *or in the alternative to proceed to trial on that date if the State elects not to seek the death penalty*." (Emphasis added.)

### Rule 9.06's Reasonable Ground(s) Requirement

¶37. Since this Court's decision in ***Sanders v. State***, 9 So. 3d 1132, 1142 (Miss. 2009), Rule 9.06 has been construed to mean that, in any instance in which the trial court orders a competency evaluation of the defendant, this establishes conclusively (for appellate-review purposes) that the trial court had reasonable ground(s) to believe the defendant might be incompetent to stand trial, thus triggering Rule 9.06's competency-hearing mandate. *See* ***Smith v. State***, 149 So. 3d 1027 (Miss. 2014) (construing ***Sanders***'s and ***Coleman***'s interpretation and application of Rule 9.06 to mean that a trial court's grant of an order for a mental competency evaluation is "conclusive of its having found reasonable ground to believe [the defendant] was entitled to a mental examination and a competency hearing"); *see also* ***Hollie v. State***, 174 So. 3d 824, 830-32 (Miss. 2016) (in which a majority of this

12

Court held, based on *Sanders*, *Coleman*, and *Smith*, that a mental evaluation ordered by the trial court constitutes "a per se showing that the trial court had reasonable grounds to believe the defendant was incompetent to stand trial").

¶38.    We find this to be a hypertechnical interpretation and application of Rule 9.06 that improperly expands the scope and purpose of the rule and conflicts with Mississippi precedent.  Therefore, we reject it.

¶39.    Years ago, this Court found in the case of *Jacquith v. Beckwith*, 157 So. 2d 403 (Miss. 1963), that an order by the trial court submitting a criminal defendant to a competency examination did not itself establish sufficient ground to question the defendant's competence to stand trial.  The *Jacquith* Court acknowledged that such orders ordinarily are not controverted, "since usually the defendant or his counsel request or agree to them."  *Id*. at 408.  But *Jacquith* pointed out that the statute allowing for such examinations nonetheless "requires some evidential basis." [4]  *Id*.

¶40.    While Rule 9.06 was not in existence at the time of *Jacquith*, the same principle recognized there was recognized by Chief Justice Waller in his dissent in *Sanders*, when speaking to Rule 9.06.  *See Sanders*, 9 So. 3d at 1142 (Waller, C.J., dissenting).  The trial court is obligated to hold a competency hearing only "where there is sufficient doubt about

---

[4] *Jacquith* was speaking to former Section 2575.5 of Chapter 262, Mississippi Laws (1942).  That section became law in 1960 shortly after the United States Supreme Court's decision in *Dusky*, which was handed down earlier that same year.  Section 2575.5's language was carried over to current Section 99-13-11, amended in 1997 to allow for competent "psychologist(s)" to be selected in addition to "psychiatrist(s)."  *See* Miss. Code § 99-13-11(Rev. 2015).

a defendant's competence." *Id*. "Sufficient doubt [or reasonable ground] in the court's mind was the cornerstone of [Rule 9.06] we then created." *Id*. "In the absence of such doubt, the obligation to *sua sponte* order a competency hearing simply does not arise." *Id*.

¶41.  Justice Coleman concluded similarly in his dissent in *Smith*.  "To put it in Rule 9.06 terms, [the defendant] identifies nothing in the record of the criminal proceedings against him to indicate the existence of any 'reasonable ground to believe' him incompetent to stand trial." *Smith*, 149 So. 3d at 1036-37 (Coleman, J., dissenting) (quoting Rule 9.06).  Noting what the Court of Appeals had found in *Smith v. State*, 149 So. 3d 1048 (Miss. Ct. App. 2013), Justice Coleman stated, "myriad reasons [may] exist to conduct a mental competency examination aside from a determination that the above-described reasonable grounds exist." *Id*. at 1037 (citing *Smith*, 149 So. 3d at 1051-52).

¶42.  We agree.  In line with the requirement(s) recognized in *Jacquith* and in other similar opinions, we hold that a trial court's competency evaluation order does not in and of itself conclusively (or necessarily) establish, for purposes of Rule 9.06's mandates, or appellate-review purposes, that the trial court had reasonable grounds to believe the defendant was incompetent to stand trial.  Such a determination must be made based on the facts and circumstances attending each particular case.

¶43.  For our purposes here, however, whether reasonable grounds existed when the trial court ordered Pitchford's competency evaluation in 2006 is moot given this Court's 2013 order requiring the trial court to conduct a retrospective competency hearing.  The sole

14

question now presented is whether the 2015 retrospective competency hearing conducted by the trial court satisfied Rule 9.06's mandate(s).

### Retrospective Competency Hearing

¶44.    At the outset, a plurality of this Court, as mentioned, held in *Coleman* that the appropriate remedy for failure to hold a competency hearing is a new trial, not a retrospective competency hearing. *Coleman* reasoned that the United States Supreme Court repeatedly has recognized the "inherent difficulties of such a nunc pro tunc determination under the most favorable circumstances." *Id*. at 166 (quoting *Drope*, 420 U.S. at 183). *Coleman* found that Rule 9.06 makes no mention of or suggests that a retrospective competency hearing is permissible, for the rule clearly specifies that a competency determination must occur before or during trial, not after trial, conviction, and appeal. *Id*. at 168. *Coleman* since has been affirmed by a majority of this Court in *Smith* and *Hollie*.

¶45.    *Coleman* is correct that the Supreme Court has said that retrospective competency hearings present inherent difficulties. But the Supreme Court did not announce a per se rule that retrospective competency hearings are forbidden. In *Drope*, the Court stated: "Given the inherent difficulties of such a nunc pro tunc determination under the most favorable circumstances, *see* [*Pate*, 383 U.S. at 386-87; *Dusky*, 362 U.S. at 403], we cannot conclude that such a procedure would be adequate *here*." *Drope*, 420 U.S. at 183 (emphasis added).

¶46.    In *James v. State*, 86 So. 3d 286, 290-94 (Miss. Ct. App. 2012), Justice Maxwell, then serving on the Court of Appeals and writing for a unanimous court, found that a retrospective hearing previously ordered by the Court of Appeals and conducted three years after the

15

defendant's criminal trial, satisfied constitutional due process requirements and the purpose of Rule 9.06. *Id*. (citing *Hearn v. State*, 3 So. 3d 722, 730 (Miss. 2008) (which held that a Rule 9.06 hearing did not necessarily have to take place as long as "the purposes of Rule 9.06 were satisfied")).

¶47.    *James* noted that the Fifth Circuit, "though 'acutely aware of the hazards connected with retrospective competency hearings,' nevertheless 'has repeatedly sanctioned nunc pro tunc proceedings where there is sufficient data available to guarantee reliability.'" *Id*. at 293 (quoting *Wheat v. Thigpen*, 793 F.2d 621, 630 (5th Cir. 1986)). *See also Zapata v. Estelle*, 588 F.2d 1017, 1020 (5th Cir. 1979) ("When the trial court does ignore a bona fide doubt as to the defendant's competence to stand trial, *Pate* dictates a nunc pro tunc competency hearing if a meaningful inquiry into the defendant's competence can still be had.")

¶48.    *James* further noted that a majority of courts now agree that "failure to hold a competency hearing can be cured retroactively" where sufficient information exists to make a retrospective hearing meaningful. *James*, 86 So. 3d at 293 (citing *People v. Ary*, 51 Cal. 4th 510, 120 Cal. Rptr. 3d 431, 246 P.3d 322, 329 (2011)).

¶49.    We agree with the Court of Appeals. And to the extent *Coleman*, *Smith*, and *Hollie* are inconsistent with our holding today, they are overruled.

¶50.    Where sufficient information is available to conduct a meaningful hearing to evaluate retrospectively the defendant's competence to stand trial, such a hearing does not violate due process standards. *See, e.g.*, *Wheat*, 793 F.2d at 630 ("The test for the district court in determining the question of meaningfulness is whether 'the quantity and quality of available

evidence was adequate to arrive at an assessment that could be labeled as more than mere speculation.'") (quoting *Bruce v. Estelle*, 536 F.2d 1051, 1057 (5th Cir. 1976), *cert. denied*, 429 U.S. 1053, 97 S. Ct. 767, 50 L. Ed. 2d 770 (1970)). "'[C]ontemporaneous expert medical evidence often provides the most useful evidence' of whether a meaningful retrospective hearing may be held." *James*, 86 So. 3d at 293 (quoting *Wheat*, 793 F.2d at 630).

¶51.    We also are in accord with the Fifth Circuit that the State should bear the burden of demonstrating that a meaningful retrospective competency hearing can be conducted. Once demonstrated, the defendant then bears the burden to prove he or she was "most probably" incompetent at the time of trial. *See, e.g.*, *Bruce*, 536 F. 2d at 1059.

**Instant Case**

¶52.    Here, the record clearly illustrates that the information available to the trial court for the retrospective competency hearing in May 2015 was more than adequate. Available and used at the hearing was the state hospital's medical report from the competency evaluation Pitchford submitted to shortly before his trial in February 2006; the two doctors who performed Pitchford's evaluation(s); and the transcript from Pitchford's guilty-plea proceeding that occurred shortly before trial. The same judge who presided over Pitchford's trial had presided over Pitchford's guilty-plea proceeding, and over the May 2015 retrospective competency hearing.

¶53.    In addition, Pitchford presented his own witnesses, including an expert witness, Dr. Bailey, who had evaluated Pitchford two days before the 2006 trial and thereafter formulated

17

a report that was never made available to the trial court during the 2006 trial. According to Dr. Bailey, one of the main reasons he believed Pitchford was not legally competent to stand trial in February 2006 was based on his review of the transcript from Pitchford's guilty-plea hearing.

¶54. During the guilty-plea hearing, Pitchford indicated that he wanted to speak to his mother before entering a plea. In Dr. Bailey's opinion, Pitchford's "comments about his mother, were the ones that seemed off balanced that he wanted to talk to his mother rather than the attorney." The trial court questioned Dr. Bailey about this as follows:

[Court]: "I think he was just wanting to talk to his mama to . . . decide, you know, 'Mama, what do you think about it?' Which is that unusual for a life-changing, drastic changing event for somebody to want to talk to a friend or family member?"

[Dr. Bailey]: "No. It wouldn't be unusual. It is highly likely that someone would want to speak to a loved one if they are having great difficulty."

[Court]: And, of course, you say you read this guilty – I mean, is there anything in where I, you know, he engages quite fully with the [c]ourt on everything I asked him. He had a show, at least in my book, looked like a pretty rational answer to every question that I was asking about his constitutional rights and about everything concerning the process. So, you know, what is it out of this transcript of this aborted guilty plea that would lead one to think that it reflects that he is not competent?

[Dr. Bailey]: Well, my testimony is the part about him asking to speak to his mother argues against him being able to work with his attorney?

[Court]: But you just said that would be a natural thing for somebody to do to talk to a loved one or family or friend?

[Dr. Bailey]: That's true.

18

[Court]:      So which is it.  I mean, it either shows that he was rational wanting to talk to a family member or it shows that he wasn't but you are saying two different things.

[Dr. Bailey]: Well, I said I clearly think that his discussion with his lawyer throughout the event on January 19th shows that he is aware of his communications.  The lawyer, Carter even said in their [sic] at times when Mr. Pitchford says we haven't discussed these things or we haven't discussed these things for a long time.  It is very clear that there is a remarkably inconsistent process, a lot of communication, I think throughout the whole process.  But, clearly on that day they showed some disagreement about whether they were  communicating.

              Mr. Pitchford's communication with the [c]ourt do [sic] show that here was some back and forth and he showed he could understand and communicate effectively as you were saying.  I am explaining my comment earlier when asked about what I think about him asking to speak to his mother, I think that argues against him having confidence in his lawyer.

[Court]:      Well, maybe confidence in his lawyer [sic] but confidence in his lawyer and competency to plead guilty or go to trial are drastically different things.

[Dr. Bailey]: That's fair.

¶55.   We find no error in the trial court's decision to reject Dr. Bailey's testimony with regard to the guilty-plea proceeding.  The transcript from that proceeding fully supports the trial court's finding that, even if Pitchford had lacked confidence in his defense counsel at the time, he nonetheless had a rational understanding of the proceeding(s) against him.

¶56.   We also find no merit in Pitchford's claim on appeal that the State's experts "failed to apply the proper standard for competency."  The 2006 competency evaluation report clearly found, as already mentioned, that:  "Pitchford has the sufficient present ability to consult with an attorney with a reasonable degree of rational understanding in the preparation

19

of his defense, and that he has a rational as well as a factual understanding of the nature and object of the legal proceedings against him."

¶57. Based on our review of the record, we find no error in the trial court's conclusion that Pitchford was competent to stand trial in 2006.

## CONCLUSION

¶58. For these reasons, we affirm the judgment of the circuit court denying Pitchford's PCR petition based on the court's finding that Pitchford was competent to stand trial in February 2006.

¶59. **POST-CONVICTION RELIEF DENIED.**

**WALLER, C.J., RANDOLPH, P.J., COLEMAN, MAXWELL, CHAMBERLIN AND ISHEE, JJ., CONCUR. KITCHEN, P.J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.**

**KITCHENS, PRESIDING JUSTICE, CONCURRING IN RESULT ONLY:**

¶60. With respect, I concur in result only. Without question, Pitchford is procedurally barred from challenging this Court's prior order for a retrospective competency hearing. For that reason, there is no need to consider, let alone to overrule, the well-established holdings of numerous cases and to overhaul Mississippi's law governing mental competency determinations in criminal cases under Uniform Rule of Circuit and County Court Practice 9.06, with the effect of rolling back protections previously afforded criminal defendants.[5] I do agree with the majority's conclusion that the trial court's mental competency

---

[5] Effective July 1, 2017, this Court adopted new rules governing mental examinations and competency determinations. *See* M.R.Cr.P. 12. However, proceedings prior to July 1, 2017, including the instant case, were controlled by Uniform Rule of Circuit and County Court Practice 9.06.

20

determination was not clearly erroneous, and that the State's experts applied the proper standard for mental competence. I would affirm, but for different reasons than those articulated by the majority.

> *A. Pitchford's challenge to this Court's prior order for a retrospective competency hearing is procedurally barred.*

¶61. This matter commenced when Pitchford filed, in this Court, his application for leave to proceed in the trial court with a motion for post-conviction relief. *See* Miss. Code Ann. § 99-39-27 (Rev. 2015). Pitchford made four claims in that application, including (1) that his constitutional rights had been violated because he was not afforded a mental competency hearing; (2) that he was deprived of his constitutional right to a fair trial due to racial discrimination by the State during *voir dire*; (3) that he received ineffective assistance of counsel; and (4) that he was denied a fair trial because a juror had concealed material facts that showed the juror's bias. In an order entered on February 14, 2013, this Court found that the second, third, and fourth issues lacked sufficient merit to warrant a hearing. But we found that Pitchford's application should be granted regarding the issue concerning the mental competency hearing. We set forth the following analysis of the issue:

> [T]he record indicates that the trial judge ordered that Pitchford be evaluated for competency to stand trial, and that an evaluation took place at the Mississippi State Hospital. Pitchford alleges that his counsel appeared before the trial court to argue several pending motions including defendant's motion for a continuance; and that – based upon a written report from the Mississippi State Hospital – the trial judge decided he was competent to stand trial. Pitchford further alleges that his counsel had no prior notice that his competency to stand trial would be adjudicated that day. The State does not dispute these allegations, and this Court finds no evidence in the record before us that notice was provided to the Defendant that his competency to stand trial would be adjudicated on the day of the hearing on pending motions.

21

> This Court has held that, when a trial judge has ordered that a defendant be evaluated for competency to stand trial, Rule 9.06 of the Uniform Rules of Circuit and County Court Practice requires the trial judge to conduct a competency hearing. A Defendant is entitled to reasonable prior notice of the hearing at which competency to stand trial will be decided, so that the defendant will have the opportunity to subpoena witnesses and produce additional information for consideration by the trial judge.

*Pitchford v. State*, No. 2010-DR-01032-SCT (Order of Feb. 14, 2013). In granting Pitchford's request for leave to proceed in the trial court on his mental competency issue, we remanded the matter to the Circuit Court of Grenada County for a hearing to determine retroactively whether Pitchford had been mentally competent to stand trial during his February 2006 capital murder trial. We denied his remaining claims.

¶62. Mississippi Code Section 97-39-27 provides that, in granting an application for leave to proceed in the trial court with a motion for post-conviction relief, this Court possesses discretion to "grant or deny all relief requested in the attached motion." Miss. Code Ann. § 99-39-27(7)(a). We also may permit the filing of the motion in the trial court for further proceedings. Miss. Code Ann. § 99-39-27(7)(b). The denial of an application is "a final judgment and shall be a bar to a second or successive application under this article." Miss. Code Ann. § 99-39-27(9).

¶63. The February 14, 2013, order reveals that the Court considered the merits of Pitchford's claim regarding the denial of a mental competency hearing and determined that the appropriate remedy under the particular facts presented was a retrospective competency hearing. All other relief requested by Pitchford was denied. In 2015, the retrospective competency hearing occurred, and the trial court entered an order finding that Pitchford had

22

been mentally competent during his 2006 trial and denying the motion for post-conviction relief. Pitchford has appealed that order, and he now requests that this Court reconsider its prior order of a retrospective competency hearing. The problem with this request is that the question of the appropriate relief for the imperfect process in the trial court already has been resolved, and, absent an exception, it cannot be relitigated. When this Court granted Pitchford a retrospective mental competency hearing, we necessarily denied his claim that a new trial was the appropriate remedy for the deficiencies in the trial court proceedings. Under Section 99-39-27(9), claims that are denied are subject to a bar of successive pleadings. Thus, Pitchford cannot raise the issue anew, absent an exception to the procedural bar.

¶64.    Section 99-39-27(9) provides that "excepted from [the bar of successive pleadings] are those cases in which the prisoner can demonstrate either that there has been an intervening decision of the Supreme Court of either the State of Mississippi or the United States that would have actually adversely affected the outcome of his conviction or sentence . . . ." Miss. Code Ann. § 99-39-27(9). The case of *Coleman v. State*, 127 So. 3d 161 (Miss. 2013), was decided approximately eight months after our order of February 14, 2013. Pitchford claims that, because in *Coleman*, a plurality of this Court repudiated the notion that a retrospective mental competency hearing could remedy a failure to hold a pretrial competency hearing, we erred by ordering a retrospective competency hearing in his case. But because *Coleman* distinguished the specific facts of Pitchford's case, *Coleman* is not an intervening decision that "would have actually adversely affected the outcome of

23

[Pitchford's] conviction or sentence." ***Coleman*** first set forth the facts before the Court in

its ***Pitchford*** order as follows:

> [I]n ***Pitchford v. State***, 2010–DR–01031–SCT (Order of February 14, 2013),
> this Court ordered a post-trial competency hearing to determine whether the
> defendant had been mentally competent to stand trial. In ***Pitchford***, a capital
> murder case, the trial court granted the defendant a competency hearing, and the
> defendant submitted to a mental examination at the Mississippi State Hospital.
> ***Pitchford***, 2010-DR-01031-SCT. The trial court held a hearing to rule on
> several pending motions as well as competency. ***Id.*** Defense counsel was not
> provided notice that Pitchford's competency to stand trial would be addressed
> at the hearing, and came prepared to argue only the pending motions. ***Id.*** Based
> on the written report from the Mississippi State Hospital, the trial court
> determined that Pitchford was mentally competent to stand trial. ***Id.*** This Court
> held that "[a] Defendant is entitled to reasonable prior notice of the hearing at
> which competency to stand trial will be decided, so that the defendant will have
> the opportunity to subpoena witnesses and produce additional information for
> consideration by the trial judge." ***Id.*** In order to afford Pitchford's counsel
> ample time to prepare, we ordered the trial court to conduct a hearing to
> determine whether Pitchford had been mentally competent to stand trial. ***Id.***

***Coleman***, 127 So. 3d at 165. Then, the plurality distinguished the case from ***Pitchford***,

outlining the important factual differences in the cases as follows:

> [W]e note that the facts and circumstances presented in ***Pitchford*** were
> significantly different than those before us in the present case. In ***Pitchford***, the
> trial court held a hearing, but defense counsel was not given notice that mental
> competency to stand trial was to be determined at that time. ***Pitchford***,
> 2010–DR–01032–SCT (Order of February 14, 2013). Here, the trial court
> outright denied Coleman a hearing and determined that he somehow had
> waived his right to a competency hearing, despite repeated requests for such a
> proceeding both before and during trial. In ***Pitchford***, the defendant's
> competence to stand trial was determined based on a written report from the
> Mississippi State Hospital; but here, the trial court based its determination of
> Coleman's competence to stand trial on a four-page summary report. ***Pitchford***,
> 2010–DR–01032–SCT. We found that, under the facts in ***Pitchford***, where the
> trial court held a mental competency hearing but did not give notice to defense
> counsel, a retrospective mental competency hearing was sufficient to guard the
> defendant's due process rights. ***Id.*** On the other hand, under the facts in this
> case, when the trial court simply denied the defendant a hearing, we find that

24

a retrospective mental competency determination does not adequately protect Coleman's due process rights.

*Id.* at 167-68.

¶65.    *Coleman* clearly distinguished the facts in *Pitchford*, concluding that the due process concerns inherent in its decision to condemn retrospective mental competency hearings simply were not present in Pitchford's case, in which a hearing had occurred but the problem was lack of notice to the defense. Because *Coleman* distinguished *Pitchford*, *Coleman* was not an intervening decision that would have affected, adversely or otherwise, the outcome of Pitchford's conviction or sentence. There are no grounds for permitting Pitchford to relitigate the question of whether reversal of his conviction was the appropriate remedy for the procedural deficiencies in his pretrial mental competency determination, a matter finally decided by this Court's order dated February 14, 2013.[6]

¶66.    Because Pitchford's argument plainly is procedurally barred, we should not use his argument as a vehicle for making determinations on when a competency hearing was required under Rule 9.06 or whether retrospective mental competency hearings should be permissible. These determinations are completely unnecessary to the resolution of Pitchford's argument

---

[6] Pitchford's request that we revisit this issue also squarely implicates the law of the case doctrine. "[A]s a general rule, when an appellate court passes upon a question and remands the cause for further proceedings, the question there settled becomes the 'law of the case' upon a subsequent appeal, provided the same facts and issues which were determined in the previous appeal are involved in the second appeal." *Cont'l Turpentine & Rosin Co. v. Gulf Naval Stores Co.*, 244 Miss. 465, 480, 142 So. 2d 200, 207 (1962). Under the law of the case doctrine, our former decision on the question of Pitchford's entitlement to a remedy for the procedural defects in his competency determination is conclusive of the question raised in this appeal after remand.

and, in fact, they revisit and redetermine the exact issue already decided by this Court on February 14, 2013. Therefore, I would, with respect, deem them *dicta*.[7] This Court should find Pitchford's argument procedurally barred and then proceed to review his other arguments, in which he challenges the proceedings at the retrospective competency hearing and the trial court's rulings. But because this Court has declared that it is overruling the eight years of case law that was carefully crafted to protect a criminal defendant's constitutional right not to be tried while incompetent, I am compelled to address those decisions.

> *B. The plain language of Rule 9.06 required a competency hearing after the trial court ordered a mental evaluation.*

¶67. The state and federal constitutions protect a criminal defendant's due process right against being tried while mentally incompetent. *Pate v. Robinson*, 383 U.S. 375, 385, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966); *Williams v. State*, 205 Miss. 515, 524, 39 So. 2d 3, 4 (1949) (citing Miss. Const. art. 3, § 26). To try or convict a criminal defendant while incompetent "fundamentally impinges upon his right to a fair trial." *Hollie v. State*, 174 So. 3d 824, 830 (Miss. 2015). As this Court has recognized, "[t]he United States Supreme Court has held that 'the prohibition [against trying or convicting an incompetent defendant] is fundamental to an adversary system of justice.'" *Id.* (quoting *Drope v. Missouri*, 420 U.S. 162, 172, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975)). The test for determining competence to stand trial is "whether

---

[7] Indeed, the majority finds the issue of whether the trial court had reasonable ground to order a competency hearing in this case to be moot. Maj. Op. at ¶ 43. Yet the majority purports to alter the standard applicable to determining when a competency hearing was mandated by Rule 9.06, in stark contravention of the bedrock principle that this Court must refrain from adjudicating moot questions because we lack authority to issue advisory opinions. *In re Validation of Tax Anticipation Note, Series 2014*, 187 So. 3d 1025, 1032 (Miss. 2016).

26

[a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . and whether he has a rational as well as factual understanding of the proceedings against him." ***Dusky v. United States***, 362 U.S. 402, 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960). We have held that a competent defendant is one:

> (1) who is able to perceive and understand the nature of the proceedings; (2) who is able to rationally communicate with his attorney about the case; (3) who is able to recall relevant facts; (4) who is able to testify in his own defense if appropriate; and (5) whose ability to satisfy the foregoing criteria is commensurate with the severity of the case.

***Hollie***, 174 So. 3d at 830 (quoting ***Hearn v. State***, 3 So. 3d 722, 728 (Miss. 2008)).

¶68.    Effective May 1, 1995, this Court adopted Uniform Rule of Circuit and County Court Practice 9.06, which safeguarded the right of criminal defendants against being tried while mentally incompetent by providing the following procedure:

> If before or during trial the court, of its own motion or upon motion of an attorney, has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination by some competent psychiatrist selected by the court in accordance with § 99-13-11 of the Mississippi Code Annotated of 1972.
>
> After the examination the court shall conduct a hearing to determine if the defendant is competent to stand trial. After hearing all the evidence, the court shall weigh the evidence and make a determination of whether the defendant is competent to stand trial. If the court finds that the defendant is competent to stand trial, then the court shall make the finding a matter of record and the case will then proceed to trial. If the court finds that the defendant is incompetent to stand trial, then the court shall commit the defendant to the Mississippi State Hospital or other appropriate mental health facility.

URCCC 9.06 (emphasis added). Rule 9.06 governs this case because it was the rule in effect at the time of Pitchford's trial.

¶69.     In *Sanders v. State*, 9 So. 3d 1132, 1134-35 (Miss. 2009), the trial court had ordered a mental evaluation of the defendant, but never held a hearing to determine the defendant's competence to stand trial. On appeal, Sanders argued that the trial court had erred by failing to hold a mental competency hearing after it had ordered a mental evaluation. We noted that, under the United States Constitution, the defendant is denied due process of law if the evidence raises sufficient doubt as to his ability to stand trial and the trial court does not, on its own, conduct a separate competency hearing. *Id.* at 1135 (citing *Pate*, 383 U.S. 375, 86 S. Ct. 836). We further noted *Pate*'s holding that, when sufficient doubt exists as to the defendant's mental competence to stand trial, the defendant cannot waive a mental competency determination by failing to request a hearing. *Id.* at 1136 (citing *Pate*, 383 U.S. at 376-77, 86 S. Ct. 836). Then, we examined the language of Rule 9.06 itself, which plainly "requires an on-the-record hearing to determine competency once the court has reasonable ground to believe that the defendant is incompetent." *Sanders*, 9 So. 3d at 1136. We recognized that, because the rule employs the mandatory word *shall*, not the permissive word *may*, "it is evident that it would be error not to hold a competency hearing once a trial court orders a psychiatric evaluation to determine competency to stand trial." *Id.*

¶70.     In *Jay v. State*, 25 So. 3d 257, 261-62 (Miss. 2009), the defendant filed a motion for an extension of time, alleging that he had suffered a severe traumatic brain injury. He attached a physician's letter to the effect that he was unable to participate in court proceedings. *Id.* at 262. In response, the trial court ordered a mental evaluation of the defendant. *Id.* at 262. Although the report of the mental evaluation was filed two days before the trial, the trial went

28

forward with no on-the-record pretrial determination of Jay's mental competence to stand trial. *Id.* This Court unanimously reversed, holding that Rule 9.06 not only requires that the trial court order the defendant to undergo a mental evaluation when the trial court has reasonable ground to believe the defendant is mentally incompetent to stand trial, but that, after said mental evaluation, "the court *shall* hold a competency hearing to determine whether the defendant is competent to stand trial." *Id.* We also found that, because the evidence raised a *bona fide* doubt as to Jay's mental competence to stand trial, the failure to hold a competency hearing violated his constitutional due process rights. *Id.* at 263.

¶71.    In *Beasley v. State*, 136 So. 3d 393, 398 (Miss. 2014), this Court again set forth the firm requirements of Rule 9.06. We said that, "[s]imply put, Rule 9.06 'mandates that a competency hearing be conducted following a court-ordered mental examination.'" *Id.* But in *Beasley*, we found that no reversible error had occurred because the trial court had complied with Rule 9.06. *Id.* at 399. The trial court had granted Beasley's motion for a mental evaluation on the ground that there was a legitimate issue as to Beasley's mental competence. *Id.* at 398. And after the completion of the mental evaluation, the trial court had held an on-the-record competency hearing, weighed the evidence, and found Beasley competent to stand trial. *Id.* at 399.

¶72.    In *Smith v. State*, 149 So. 3d 1027, 1030 (Miss. 2014), the trial court ordered that Smith undergo a mental evaluation, but the mental evaluation never took place. The trial court never held a competency hearing before accepting Smith's guilty plea. *Id.* Smith raised these deficiencies in a motion for post-conviction relief. *Id.* at 1029. On appeal, relying on *Sanders*,

we held that "a trial court's order of a mental evaluation to determine competency under Rule 9.06 means that the trial court had reasonable ground to believe the defendant was incompetent to stand trial." *Id.* at 1033. And according to Rule 9.06, once the trial court orders a mental evaluation, after the completion of the mental evaluation, "the court shall conduct a hearing to determine if the defendant is competent to stand trial." *Id.* We held that, under Rule 9.06, "when the trial court has such reasonable ground [to believe the defendant incompetent to stand trial] a mental evaluation and competency hearing are required." *Id.* But because this Court was unable to determine whether the trial court had ordered the mental evaluation for the purpose of determining Smith's mental competence, rather than for some other reason, we remanded for an evidentiary hearing to ascertain the purpose of the court-ordered mental evaluation. *Id.* at 1034-35. We held that "if, after the evidentiary hearing, the trial court determines that the purpose of the court-ordered mental evaluation was to determine Smith's competence to stand trial, Smith's conviction cannot stand, and Smith must be either retried or institutionalized following a mental evaluation and competency hearing under Rule 9.06." *Id.* at 1035.

¶73. This Court revisited this issue in *Hollie*, 174 So. 3d at 826, in which the trial court had ordered a mental evaluation, but later accepted Hollie's guilty plea without making any determination concerning his mental competence. We reversed, applying our prior holdings that "[i]n cases like today's, in which a mental evaluation has been ordered, this Court has held that this is a per se showing that the trial court had reasonable grounds to believe the defendant was incompetent to stand trial." *Id.* at 830. "As a result, once a mental evaluation

30

is ordered, a competency hearing is mandatory." *Id.* We further recognized that a defendant cannot waive the right to a competency hearing by not objecting to the trial court's failure to hold a competency hearing. *Id.* at 831. Although *Hollie* was not a majority opinion, six justices agreed that the failure to hold a mental competency hearing was reversible error.

¶74. This Court has held that a competency hearing was not required after a court-ordered mental evaluation as long as "the purposes of Rule 9.06 were satisfied." In *Hearn v. State*, 3 So. 3d 722, 730 (Miss. 2008), this Court found that the purposes of Rule 9.06 were satisfied because one of Hearn's examining physicians had testified at trial about Hearn's competence and was cross-examined by Hearn's counsel. In those particular circumstances, we held that the failure to hold a competency hearing after the trial court had ordered a mental evaluation was not reversible error. *Id.* Prior to *Evans v. State*, ___ So. 3d ___, 2017 WL 2592415, (Miss. June 15, 2017), every case that addressed the issue distinguished *Hearn* on its facts and treated *Hearn* as a narrow exception to the rule. But even in *Evans*, in which this Court found that the purposes of Rule 9.06 had been satisfied even though no mental competency hearing had occurred, this Court did not overrule our holdings that the rule's plain language requires that if the trial court orders a mental evaluation, a pretrial mental competency hearing must follow.

> *C. This Court has established that a retrospective competency hearing is not an appropriate remedy for the failure to hold a pretrial competency hearing when one was required by Rule 9.06.*

¶75. This Court addressed the appropriate remedy for a violation of the competency hearing requirement of Rule 9.06 in *Coleman*, 127 So. 3d 161. In *Coleman*, a plurality of this Court

reversed a decision of the Court of Appeals, which had remanded the case for a retrospective mental competency hearing after finding that the defendant erroneously had been denied a mental competency hearing by the Lauderdale County Circuit Court. *Id.* at 162. The plurality found that a *nunc pro tunc* mental competency hearing did not adequately protect the defendant's due process rights and the procedural guarantees of Rule 9.06, finding:

> Rule 9.06 plainly mandates that the next step after the mental examination has occurred is for the trial court to hold a separate competency hearing before trial. This simply was not done. A retrospective competency hearing is not mentioned or even suggested by Rule 9.06, for the rule clearly specifies that a competency determination must occur "before or during trial," not after trial, conviction, and appeal. Thus, such an innovation should not be condoned by this Court. It is neither prudent nor permissible for our trial courts, in their implementation of Rule 9.06, to deny a timely hearing on the accused person's mental competence to stand trial, to proceed to trial, and then attempt later to remediate the omission by conducting an extremely untimely mental competency hearing.

*Id.* at 168. The plurality found that a failure to follow Rule 9.06 cannot be cured by a retrospective competency hearing.[8] *Id.* at 168. In *Smith* and later, in *Hollie*, a majority of the Court adopted *Coleman*'s holding that a retrospective mental competency hearing is not an adequate remedy for the failure to hold the mental competency hearing required by Rule 9.06, and that the appropriate remedy is a new trial.

> *D. The majority's decision conflicts with Rule 9.06 and contravenes stare decisis.*

¶76.    The majority purports to overrule *Hollie*, *Smith*, *Beasley*, *Coleman*, *Jay*, and *Sanders* with no more explanation than that these decisions posited "a hypertechnical interpretation

---

[8] As discussed above, *Coleman* expressly distinguished the facts of *Pitchford*, finding that a retrospective competency hearing had been appropriate to cure the problem with lack of notice in Pitchford's case. *Coleman*, 127 So. 3d at 167.

and application of Rule 9.06 that improperly expands the scope and purpose of the rule and conflicts with Mississippi precedent." Maj. Op. at ¶ 38. With respect to the majority, it is abundantly clear that these decisions did nothing more than apply the plain language of Rule 9.06, which provides that, if the trial court has reasonable ground to believe the defendant is mentally incompetent to stand trial, the trial court *shall* order a mental evaluation and *shall* conduct a mental competency hearing. URCCC 9.06. It is well established that this Court applies the plain language of a statute or court rule when that language is unambiguous and leaves no room for interpretation or construction, *Coleman v. State*, 947 So. 2d 878, 881 (Miss. 2006), therefore, doing so cannot be "hypertechnical." The language of Rule 9.06 – the rule applicable to Pitchford – is plain and unambiguous and employs the word *shall*, which this Court has held on numerous occasions is a mandatory term. *Tunica Cty. v. Hampton Co. Nat'l Surety LLC*, 27 So. 3d 1128, 1134 (Miss. 2009).

¶77.    The majority also finds that these decisions conflict with Mississippi precedent. Maj. Op. at ¶ 38. Respectfully, these decisions *are* Mississippi precedent – eight years of Mississippi precedent that meticulously applied Rule 9.06. That the majority has changed its collective mind does not signify any precedential conflict. The majority relies on *Jaquith v. Beckwith*, 157 So. 2d 403 (Miss. 1963), admittedly a case from "[y]ears ago," long before the enactment of Rule 9.06, that held that the trial court's order for a mental evaluation requires "some evidential basis." Maj. Op. at ¶ 39. Then, the majority finds that a trial court is obligated to hold a mental competency hearing "only 'where there is sufficient doubt about

33

a defendant's competence."[9] Maj. Op. at ¶ 40. Thus, the majority jettisons the plain language of Rule 9.06 and simply would return us to the minimum federal constitutional standard articulated in *Pate*, with absolutely no regard for the procedural rule that this Court thoughtfully and conscientiously promulgated to guarantee the constitutional rights of criminal defendants not to be tried while mentally incompetent.

¶78.    The majority likewise pivots on retrospective competency hearings, finding that these hearings, once found to conflict with the requirements of Rule 9.06, now should be permitted "where there is sufficient data to guarantee reliability" and "a meaningful inquiry into the defendant's competence can still be had." Maj. Op. at ¶ 47. The majority bases this decision not on our governing case law, but on an opinion from the Mississippi Court of Appeals and on opinions from the Fifth Circuit Court of Appeals that retrospective mental competency hearings do not offend due process provided certain requisites are met.

¶79.    In undertaking to overruling *Hollie*, *Smith*, *Beasley*, *Coleman*, *Jay*, and *Sanders*, the majority reduces the procedural protections heretofore in place to protect criminal defendants against being tried while incompetent. In its bid to return this Court to pre-Rule 9.06 federal-only constitutional standards, the majority not only ignores the plain language of Rule 9.06, but it neglects the fact that this Court is fully empowered to construe our state constitution and laws to provide greater protections for the rights of the citizenry than those afforded by the

---

[9] Under Rule 9.06, a trial court could order a mental evaluation to determine mental competence to stand trial only when the trial court had reasonable ground to believe the defendant was incompetent to stand trial. URCCC 9.06. Therefore, logic dictates that if the trial court ordered a mental evaluation, some basis existed for the court to doubt the defendant's competence to stand trial.

United States Constitution. ***Graves v. State***, 708 So. 2d 858, 861 (Miss. 1997). This Court already has determined that, under the plain language of Rule 9.06, the trial court's order for a mental evaluation means that the trial court had reasonable ground to doubt the defendant's mental competence, triggering the requirement for a hearing. And the Court already has determined that retrospective mental competency hearings are inadequate to protect the defendant's due process rights and the procedural guarantees of Rule 9.06. ***Coleman***, 127 So. 3d at 162; ***Smith***, 149 So. 3d at 1035. The Court has no principled reason to revert to prerule standards.

¶80. Another consideration is that the majority's decision implicates the doctrine of *stare decisis*. That doctrine provides "that prior applicable precedent usually must be followed even though the case, if considered anew, might be decided differently by the current court." The trial bench and bar have a right to expect consistent decisions from this Court. ***United Servs. Auto. Ass'n v. Stewart***, 919 So. 2d 24, 30 (Miss. 2005); ***Hye v. State***, 162 So. 3d 750, 755 (Miss. 2015). We have said that:

> The doctrine of *stare decisis* is the bedrock of our system of jurisprudence. It has given direction and stability to the common law whose precepts constitute the larger part of the rules by which we live and are governed. It demands definiteness in the law, and that its rules be consistent so that they may be known. It has been said to be the most fundamental characteristic of the common law as distinguished from other systems.

***State ex rel. Moore v. Molpus***, 578 So. 2d 624, 634 (Miss. 1991) (quoting ***Laurel Daily Leader, Inc. v. James***, 224 Miss. 654, 681, 80 So. 2d 770, 780-81 (1955) (Gillespie, J., Special Opinion)). Although this time-honored doctrine may be overcome if legal reason and justice so demand, generally courts will depart from prior applicable precedent only "when

35

such departure is necessary to avoid the perpetuation of pernicious error." *Hye*, 162 So. 3d at 755; *see also **Bell v. State***, 160 So. 3d 188, 195 (Miss. 2015) (stating that, even though the current Court may disagree with a previous statutory interpretation, we must continue to apply it unless we consider it pernicious, impractical, or mischievous in effect).

¶81.   The majority makes no finding that our prior interpretation of Rule 9.06 has resulted in pernicious error or that legal reason and justice demand a reduction in the process due to potentially mentally incompetent criminal defendants. In my opinion, one could not so find, because our prior interpretation of Rule 9.06 assured that a criminal defendant whose mental competence has been placed in doubt, as evidenced by a trial court order for a mental evaluation, was afforded the competency hearing necessary to resolve the vital question of whether the defendant was mentally competent to stand trial. And certainly, a *nunc pro tunc* competency hearing, in which the parties must struggle to establish what the defendant's mental state was in the distant past, affords far less protection than a timely pretrial competency hearing. In my opinion, the majority's decision fails to meet the high burden required to dispense with our longstanding interpretation of Rule 9.06.

### E. Conclusion

¶82.   Pitchford's attempt to reargue the question of the appropriate remedy for the procedural deficiencies in his 2006 pretrial competency determination is procedurally barred because that issue was finally decided by this Court in its order of February 14, 2013, which remanded the case for a retrospective competency hearing. Because the issue is procedurally barred, there is no need to alter, or even to discuss, the law governing mental competency determinations

36

under Rule 9.06, and to do so is both imprudent and harmful. Although I condemn the majority's attempt to overrule eight years of precedent governing mental competency determinations under Rule 9.06, I agree with its decision to affirm the outcome of Pitchford's retrospective competency hearing, but would do so by a different and less disruptive route.

**KING, J., JOINS THIS OPINION.**