# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-01334-COA

**FRANK FIGUEROA A/K/A FRANK ERNAST FIGUEROA**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/09/2019 |
| TRIAL JUDGE: | HON. LISA P. DODSON |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | WILLIAM STACY KELLUM III |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 11/24/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLTON, P.J., FOR THE COURT:**

¶1.    In 2003, Frank Figueroa pleaded guilty to exploitation of a child pursuant to Mississippi Code Annotated section 97-5-33(2) (Rev. 2000).  The Harrison County Circuit Court sentenced Figueroa to ten years in the custody of the Mississippi Department of Corrections (MDOC), with seven years suspended and three years to serve.  The trial court also ordered that upon Figueroa's release, he was to be placed on five years of reporting probation and to register as a sex offender.

¶2.    Figueroa filed his first motion for post-conviction relief (PCR) in 2005, which the trial court denied.  Figueroa appealed from the trial court's order denying his PCR motion. On

June 26, 2008, this Court entered an order granting the State's motion to dismiss Figueroa's appeal based on the fact that Figueroa was no longer in custody, which, at that time, was required for an appeal from the denial of a PCR motion pursuant to Mississippi Code Annotated section 99-39-5(1) (Rev. 2000).[1] This Court also recognized that the trial court denied Figueroa's motion for out-of-time appeal.

¶3. In March 2018, Figueroa filed his second PCR motion, which the trial court dismissed as time-barred and successive-writ barred. The trial court found that Figueroa failed to raise any exceptions to these procedural bars in his PCR motion. The trial court ultimately denied Figueroa's second PCR motion after addressing Figueroa's assignments of error and finding that they lacked merit.

¶4. Figueroa now appeals from the trial court's order denying his second PCR motion. Upon review, we find no abuse of discretion, and we affirm the trial court's judgment.

**FACTS**

¶5. Figueroa was indicted for felony exploitation of a child (Count I) and felony attempted statutory rape (Count II). On September 15, 2003, Figueroa pleaded guilty to Count I—exploitation of a child. On December 1, 2003, the trial court sentenced Figueroa to ten

---

[1] In *Howell v. State*, 283 So. 3d 1100, 1104 (¶16) (Miss. 2019), the Mississippi Supreme court determined that "[s]tanding no longer hinges on the requirement of being 'any prisoner in custody under sentence of a court of record of the State of Mississippi.' Instead, postconviction relief is available to '[a]ny person sentenced by a court of record of the State of Mississippi[.]'" (Citing Miss. Code Ann. § 99-39-5(1) (Rev. 2015)). Based on *Howell*, we recognize that Figueroa has standing to challenge his conviction through his PCR motion even though he is no longer serving the sentence addressed in his motion.

years in the custody of the Mississippi Department of Corrections (MDOC), with seven years suspended, leaving three years to serve. The trial court also ordered Figueroa to pay court costs and fines. The trial court further ordered that upon Figueroa's release, he was to be placed on five years of reporting probation and to register as a sex offender. On July 28, 2004, Figueroa filed a motion to withdraw his guilty plea. The trial court denied this motion on February 25, 2005.

¶6.     In June 2005, Figueroa filed his first PCR motion. In May 2006, the trial court entered an order denying Figueroa's PCR motion. In its order, the trial court specified that "[a]s to any ineffective assistance claims, including any issue of coercion, the pleadings are deficient; and[] are procedurally barred." The trial court also reviewed the transcript from Figueroa's plea hearing and found that Figueroa repeatedly assured the trial court that he understood his plea petition. The trial court accordingly held that "[g]iven those assurances under oath, . . . [Figueroa's guilty plea petition] eliminate[s] any factual dispute concerning ineffective assistance of counsel."

¶7.     The trial court also recognized that Figueroa acknowledged his guilt on four separate occasions: to the police upon arrest; upon execution of his sworn petition to enter his guilty plea; during the plea colloquy at his guilty plea hearing; and when he presented a letter to the trial court on the day of sentencing, admitting his guilt. In the letter, Figueroa stated, in pertinent part, "I did send pictures of children under the age of eighteen who were engaging in sexual explicit activities. I'm ashamed and I'm sorry[.]"

3

¶8. In July 2006, Figueroa filed a motion for an out-of-time appeal with the supreme court. The supreme court entered an order denying Figueroa's motion in September 2006. In its order, the supreme court directed Figueroa to file his motion for an out-of-time appeal in the trial court. In October 2006, Figueroa filed his motion for an out-of-time appeal in the trial court. In July 2007, the trial court entered an order denying Figueroa's motion. Figueroa then filed an appeal from the trial court's denial of his motion for out-of-time appeal. In July 2008, this Court dismissed Figueroa's appeal because Figueroa was no longer in custody.

¶9. In March 2012, the trial court entered an order discharging Figueroa from his probation. On November 7, 2017, Figueroa filed an application for leave to file a PCR motion in the supreme court. On February 21, 2018, the Supreme Court dismissed the application without prejudice to Figueroa's right to file his request in the trial court. Figueroa then filed his application for leave to file a PCR motion in the trial court.

¶10. Figueroa filed his second PCR motion on March 15, 2018. In his PCR motion, Figueroa asserted the following claims: his guilty plea was involuntary due to ineffective assistance of counsel; his sentence and lifetime registration as a sex offender violate the Constitutions of the United States and of the State of Mississippi, and the trial court lacked jurisdiction over his charge.

4

¶11. On August 9, 2019, the trial court entered an order denying Figueroa's PCR motion.[2] The trial court's order is very thorough, and we will quote from it as needed below. In the order, the trial court dismissed Figueroa's PCR motion as time-barred and successive-writ barred and found that Figueroa failed to show an exception to the procedural bars. The trial court observed that "Figueroa already presented most of the claims made here and had those ruled on in the prior post[-]conviction proceeding. He even included the same letters and affidavits as in the prior proceeding." Although the trial court determined that Figueroa's claims in his second PCR motion were barred, the trial court addressed the merits of the claims "[o]ut of an abundance of caution." The trial court ultimately determined that Figueroa's arguments lacked merit.

¶12. Figueroa now appeals.

## STANDARD OF REVIEW

¶13. "This Court reviews a [trial] court's dismissal of a PCR motion for abuse of discretion." *Jackson v. State*, 287 So. 3d 1060, 1061 (¶5) (Miss. Ct. App. 2019). We leave the trial court's factual findings undisturbed "unless they are clearly erroneous." *Id*. We review questions of law de novo. *Id*.

## DISCUSSION

---

[2] In its order, the trial court cited to section 99-39-5 and held that because Figueroa's sentence had expired and he was no longer incarcerated or on probation, his PCR motion "fails because he has no statutory authority to file or proceed on it." As stated, based on *Howell*, we recognize that Figueroa has standing to challenge his conviction through his PCR motion even though he is no longer serving the sentence addressed in his motion.

¶14. Mississippi Code Annotated section 99-39-5(2) (Rev. 2015) requires all PCR motions to be filed within three years after the trial court enters a judgment of conviction. The trial court entered Figueroa's judgment of conviction in 2003, and Figueroa filed his current PCR motion in 2018, approximately fifteen years after his judgment of conviction.

¶15. The Uniform Post-Conviction Collateral Relief Act (UPCCRA) also states that an order dismissing or denying a movant's requested relief serves as a final judgment and bars all "second or successive motions." Miss. Code Ann. § 99-39-23(6) (Rev. 2015). Figueroa filed his first unsuccessful PCR motion in 2005. This is Figueroa's second PCR motion; therefore, it is barred as a successive motion. *See id.*[3]

¶16. To overcome these procedural bars, Figueroa must "show by a preponderance of the

---

[3] The record reflects that in Figueroa's first PCR motion, he raised the following claims: the statute under which he was convicted is unconstitutional; the trial court lacked jurisdiction to accept Figueroa's plea or sentence him because the statute under which he was convicted is unconstitutional; and he received ineffective assistance of counsel. Figueroa claimed that his trial counsel was ineffective for failing to introduce Dr. Rosenbloom as an expert witness; for telling Figueroa that Mississippi is "a Bible Belt [s]tate and due to the charge, if [there are] old ladies on the jury, they would find him guilty"; and for erroneously advising Figueroa that if he pleaded guilty, he would receive a sentence of five years of probation. Figueroa's second PCR motion, which is currently before this Court, repeats the same assignments of error as his first motion and further claims that his counsel was ineffective for failing to explain the lifetime implications of a plea that included registering as a sex offender, for failing to investigate the law and facts of this case, and for failing to pursue a potential defense of entrapment. We acknowledge that the State has asserted that Figueroa's claims are barred by the doctrine of res judicata. However, the Mississippi Supreme Court has held that "neither the common law nor our own constitutional law applies the doctrine of res judicata to constitutional claims." *Smith v. State*, 149 So. 3d 1027, 1032 (¶11) (Miss. 2014), *overruled on other grounds by Pitchford v State*, 240 So. 3d 1061, 1070 (¶49) (Miss. 2017); *see also Sims v. State*, 227 So. 3d 1167, 1169 (¶7) (Miss. Ct. App. 2017).

evidence that an exception to the procedural bars exists." *Kennedy v. State*, 287 So. 3d 258, 264 (¶17) (Miss. Ct. App. 2019), *cert. denied*, 279 So. 3d 1087 (Miss. 2019). Errors affecting one's fundamental constitutional rights constitute proper exceptions to the procedural bar. *Id*. at (¶18). "Only four fundamental-rights exceptions have been expressly found to survive procedural bars: (1) the right against double jeopardy; (2) the right to be free from an illegal sentence; (3) the right to due process at sentencing; and (4) the right to not be subject to ex post facto laws." *Nichols v. State*, 265 So. 3d 1239, 1242 (¶10) (Miss. Ct. App. 2018). This Court has additionally recognized that "the due-process right not to stand trial or be convicted while incompetent is a fundamental right not subject to the procedural bars of the Mississippi post[-]conviction-relief statutes." *Brown v. State*, 198 So. 3d 325, 330 (¶19) (Miss. Ct. App. 2015) (citing *Smith*, 149 So. 3d at 1031 (¶8), *overruled on other grounds by Pitchford*, 240 So. 3d at 1070 (¶49)). However, "merely asserting a constitutional-right violation is insufficient to overcome the procedural bars[;] . . . there must at least appear to be some basis for the truth of the claim of a fundamental-constitutional-rights violation." *Nichols*, 265 So. 3d at 1241 (¶10). Figueroa, as the PCR movant, "bears the burden of demonstrating that he has met an exception." *McComb v. State*, 135 So. 3d 928, 932 (¶13) (Miss. Ct. App. 2014).

¶17. Figueroa claims that his PCR motion raises two issues involving his fundamental rights: (1) that he received ineffective assistance of counsel and (2) that he was convicted under an unconstitutional statute. We recognize that under "extraordinary circumstances,"

7

ineffective assistance of counsel can also constitute an exception to the procedural bars of the UPCCRA. *See Chapman v. State*, 167 So. 3d 1170, 1174 (¶12) (Miss. 2015) (finding "lack of a direct appeal, lack of a court record, . . . an attorney's . . . failure to obtain a transcript, [and] lack of appellate review of the merits of . . . [movant's] claims" to be extraordinary circumstances warranting exception from PCR time-bar); *accord Rowland v. State*, 42 So. 3d 503, 507 (¶12) (Miss. 2010). Figueroa acknowledges that although his second PCR motion "may technically qualify as a successive writ" due to his prior PCR motion, this Court should not bar him from pursing relief in this PCR motion. Figueroa explains that after the trial court denied his first PCR motion, he filed a petition for an out-of-time appeal, which this Court denied based on Frank's lack of standing. Figueroa asserts that because an appellate court has not reviewed the merits of his PCR claims, his claims should be exempted from the procedural bars.

¶18. To prevail on a claim for ineffective assistance of counsel, Figueroa must prove that (1) "counsel's performance was deficient" and that (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Overcoming the procedural bars "requires more than a party's own affidavit or mere assertions made within his brief." *McCoy v. State*, 111 So. 3d 673, 679 (¶21) (Miss. Ct. App. 2012). "A defendant's claims of ineffective assistance of counsel must be pled with specificity, and the claim must be supported by affidavits other than his own." *Moore v. State*, 248 So. 3d 845, 851 (¶15) (Miss. Ct. App. 2017) (internal quotation mark omitted). When the PCR movant offers only

8

his own affidavit in support of his claim and the affidavit "is contradicted by unimpeachable documents in the record, an evidentiary hearing is not required." *Lackaye v. State*, 166 So. 3d 560, 564 (¶12) (Miss. Ct. App. 2015) (citing *Gable v. State*, 748 So. 2d 703, 706 (¶12) (Miss. 1999)).

¶19.    In this case, the trial court dismissed Figueroa's PCR motion as time-barred and successive-writ barred.  The trial court held as follows:

> Figueroa claims that his lifetime registration as sex offender in some manner violates the Constitutions.  He does not, however, provide any authority for that.  He also claims a lack of jurisdiction, but provides no applicable authority for that either.  More importantly, Figueroa raised the issues of ineffective assistance of counsel in his first post[-]conviction relief proceeding, asserted that the statute was unconstitutional, and argued that the Court had no jurisdiction to accept his plea.  He has, therefore, already raised these issues and had them denied.

The trial court acknowledged that Figueroa raised claims of ineffective assistance of counsel but found that Figueroa failed to meet his burden of proving that a fundamental-rights exception exempted him from the procedural bars.

¶20.    As stated, the trial court proceeded to review the merits of Figueroa's claim "out of an abundance of caution."  The trial court addressed Figueroa's claims that his counsel was ineffective

> for not advising Figueroa about the "evidentiary impact" of a report from [potential expert witness] Dr. Arlan Rosenbloom (hereinafter Rosenbloom); for advising Figueroa to enter an open plea with the prediction that Figueroa would probably receive probation; for not telling Figueroa that he would have to register as a sex offender for his lifetime; with regard to a "mixed question" as to jurisdiction; and for not allowing Figueroa to present his defenses.

9

¶21. The trial court found that in Figueroa's guilty plea petition and plea colloquy, Figueroa indicated that he was satisfied with the services of his attorney. Our review of Figueroa's guilty plea petition and plea colloquy confirms the trial court's findings that Figueroa expressed that he was satisfied with the advice and help of his lawyer and that Figueroa "recognize[d] that if I have been told by my lawyer that I might receive probation or a light sentence, this is merely his prediction and is not binding on the [trial court]."

¶22. As to Figueroa's claim that his counsel decided that his case was hopeless, the trial court found that this claim "was based on counsel's purported advice that Mississippi is a Bible Belt state and that if older women were on the jury, they would convict Figueroa." The trial court stated that Figueroa provided "nothing in support" of his claim. The trial court explained that "[c]ounsel is required to give an honest opinion as to all facets of a case, including his or her analysis of the potential jury pool and the impact of any evidence on that jury pool. If this was, in fact, counsel's honest opinion, there is no error in expressing that."

¶23. Our review of the record shows that Figueroa attached several affidavits to his PCR motion in support of his claims of ineffective assistance of counsel: one from his father, one from his mother, and two from friends of his family, all of which reiterated Figueroa's claims. Figueroa also attached two letters from his counsel: one written to Figueroa's father, and one written to Figueroa. The trial court further held that two letters from Figueroa's counsel refute Figueroa's claim that his counsel decided that his case was hopeless.

¶24. In the letter to Figueroa's father, Figueroa's counsel stated:

10

I'm continuing to work on this case and have another meeting scheduled with the prosecutor. My hope is to . . . see if he'll reduce his three (3) year jail sentence to probation and/or house arrest.

If these fail, then we'll proceed with trial preparation although due to the above, everyone must be aware of the potential problems.

Personally, I would rather go to trial on each and every one of my cases, however, that option, at times would not be in my client's best interests.

The final decision on which avenue to select is always up to [Figueroa].

¶25. In a letter to Figueroa, his counsel stated that counsel would be allowed to argue to the trial court for a sentence of probation and that counsel "felt" the trial court may give Figueroa "straight probation." However, counsel advised Figueroa that "you must be aware that with an open plea, . . . the judge could give you 'probation' to twenty (20) years" if Figueroa pleaded guilty to exploitation of a child.

¶26. The trial court also held that the record, specifically Figueroa's plea petition, negated his claim that he relied on his counsel's prediction that he would receive probation:

Paragraph 6 acknowledges that the Court can impose the same sentence whether Figueroa pleads guilty or goes to trial. Paragraph 7 states that Figueroa knows that "the sentence is up to the Court . . . ." Paragraph 12 as set forth above clearly states that "if I have been told by my lawyer that I might receive probation or a light sentence, this is merely his prediction and is not binding on the Court."

¶27. Figueroa also asserted in his PCR motion that Dr. Rosenbloom wrote a letter explaining that he had reviewed each of the images used for the basis of Figueroa's indictment and concluded that none of the images depicted individuals "who can be determined to be under 18 years of age." Figueroa claimed that if Dr. Rosenbloom had

11

testified, then the State's evidence that the images at issue were of minors could have been rebutted. In support of his claim, he attached the letter and curriculum vitae of Dr. Rosenbloom.

¶28. In its order, that trial court stated that this claim was raised in Figueroa's first unsuccessful PCR motion. The trial court also observed that the letter from Rosenbloom "is not even signed, much less sworn to." We recognize that the supreme court has held that "unsworn statements" that have not been "notarized as made before any official" failed to provide sufficient evidence to support a movant's allegations in his PCR motion. *Wilcher v. State*, 863 So. 2d 719, 744 (¶¶78, 80) (Miss. 2003) (citing Black's Law Dictionary 58 (6th ed. 1990)); *see also Russell v. State*, 849 So. 2d 95, 119 (¶88) (Miss. 2003) (explaining that an unsworn statement attached to a PCR motion "is not an affidavit and, pursuant to statutory requirements, we give it no credence").

¶29. As to Figueroa's additional PCR claims asserting ineffective assistance of counsel with regard to any evidentiary issues or defenses that he could have raised if his case had gone to trial, the trial court correctly found that "Figueroa's plea waived all defenses he might have had to the evidence or the weight of the evidence." The trial court cited to *Rustin v. State*, 138 So. 3d 270, 274 (¶13) (Miss. Ct. App. 2014), where this Court held that "a valid guilty plea waives any evidentiary issue." (Internal quotation marks omitted).

¶30. As to Figueroa's claim that his counsel was ineffective for failing to advise Figueroa that he would have to register as a sex offender for life, the trial court reviewed the record

12

and found that "[t]here was nothing to mislead Figueroa and no indication that he was ever led to believe that his requirement to register was for a finite time." The trial court further found that

> Figueroa has apparently been a resident of Georgia since his release from incarceration on the subject conviction. He has presumably been registering in Georgia. Thus regardless of what he was told about registering in Mississippi, it would be moot. He would be required to comply with Georgia's registration requirements as that is his state of residence.

¶31. The trial court also addressed Figueroa's complaint that Mississippi's sex offender registration statutes "are unconstitutional, unduly restrictive, make apparently too many requirements, make the registry open to the public, is arbitrary and capricious, and so forth." The trial court found that Figueroa lacked standing to complain about this statute, explaining that "[b]ased on this record, he has never registered or been required to register in Mississippi. He has lived in Georgia since at least 2007. He has not been subject to the Mississippi sex offender registration statutes and thus not affected by them."

¶32. The trial court next addressed Figueroa's argument that his counsel's failure to object to the circuit court's lack of jurisdiction to prosecute Figueroa constituted ineffective assistance of counsel. Figueroa asserted that at the time of his arrest, the exploitation of a child statute, section 97-5-33, contained no jurisdictional statements that conferred jurisdiction over a predicate act committed outside Mississippi. Figueroa argued that he sent the sexually explicit images of children via the internet from Georgia, not Mississippi, and therefore Mississippi lack jurisdiction to prosecute him. The trial court explained that

13

"Mississippi law has provided for jurisdiction in a county where any part of a crime occurred for many years[,]" and quoted Mississippi Code Annotated section 99-11-19, which states:

> When an offense is committed partly in one county and partly in another, or where the acts, effects, means, or agency occur in whole or in part in different counties, the jurisdiction shall be in either county in which said offense was commenced, prosecuted or consummated, where prosecution shall be first begun.

The trial court held, "There is no dispute that the images were received in Biloxi and viewed in Biloxi."

¶33. The trial court found that Figueroa's sworn plea petition states that he is guilty of "unlawfully, willfully, and feloniously possess[ing], transmit[ting], receiv[ing], or distribut[ing] images of children under the age of eighteen years old who were engaging in sexually explicit activities, in the Second Judicial District of Harrison County, Mississippi, on or about August 12, 2001." The trial court also referenced Figueroa's letter to the sentencing judge admitting to sending "pictures of children under the age of eighteen who were engaging in sexual [sic] explicit activities. I'm ashamed and I'm sorry." Our review of the record confirms that during the plea colloquy, the trial court questioned Figueroa about his guilt. Figueroa informed the trial court that he distributed the images of the children via email. Figueroa stated that he obtained the images "off of the Internet from other people that were on the Internet." Figueroa admitted that he viewed the images of the underage children before sending the email containing the images.

¶34. After our review, we find that Figueroa failed to offer any evidence to substantiate any

14

"extraordinary circumstance" that would explain his failure to assert his PCR claims within the statutory three-year time limitation or to overcome the successive-writ bar. We therefore find that the trial court did not abuse its discretion in denying Figueroa's PCR motion.

¶35. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR.**